CITY OF LONG BEACH, Respondent, v. CLYDE ALLEN et al., Defendants; DONALD F. COPE et al., Appellants.

Kenneth Sperry for Appellants.

Walhfred Jacobson, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Respondent.

FOX, J.—By this appeal Cope, Hoyt, Smith, Wigney, Wombacher and Wright, retired police officers of the city of Long Beach, seek to ascertain the effect on their pensions of the salary ordinances passed since their retirement.

At the time of their respective retirements each of these men had served more than 20 years in the police department and for more than one year in the promotional rank[1] held by each at the time of retirement. Under section 187, subdivision 2, of the city charter, each was entitled upon retirement to receive a fluctuating pension based on the applicable percentage of the salary currently provided for "the rank or position held by him one year prior to the date of

---

[1]One of the officers was an inspector, four were lieutenants, and the sixth was a captain of police.

retirement.'' The salary ordinance then in effect, and which had been in force for many years prior to their retirements, provided for two rates of pay, ''a'' and ''b,'' for inspectors and lieutenants. The ''a'' rate was paid during the first six months the officer was in the new rank. After the expiration of this period he was automatically paid at the higher rate. There was, however, only one pay rate for the rank of captain. At the time of their respective retirements, the appellants had qualified for and were receiving the highest salary then provided for and paid to all active members of corresponding rank.

After the retirement of appellants the city council passed a salary ordinance that became effective September 1, 1948, which provided five rates of pay for each position in the police department, including the positions formerly held by appellants. These rates were designated by the letters ''a,'' ''b,'' ''c,'' ''d'' and ''e.'' They provided for salary increases after various lengths of service; the last two, however, were merit raises to be given only upon the recommendation of the head of the department and approval of the city manager. The ordinance contained a provision that in the event the rate of pay designated therein for an officer or employee was less than the rate of pay of such officer or employee on August 31, 1948, the salary of such person should be at the pay rate next higher than that established for his salary on the latter date. Thus all employees would receive the same or higher salaries upon the transition from the old to the new salary ordinance. To illustrate, under the former salary ordinance an inspector in the ''b'' or highest rate received $315 per month. In the ordinance of September 1, 1948, the salary scale for an inspector was as follows:

| A | B | C | D | E |
|---|---|---|---|---|
| $273 | $288 | $305 | $322 | $341 |

Since, upon the transition, an inspector must not be paid less than the $315 per month he had been receiving, it follows that he moved into the D rate of $322 per month. The same relative situation applied with respect to lieutenants, so that officers of that rank who were receiving the highest salary were also placed in the D salary bracket. As to the position of captain, which had only one salary rate of $400 per month under the former ordinance, that rank naturally fell into the ''c'' rate under the new ordinance, which carried a salary of $403.

The trial court held, in effect, that appellants were only entitled to receive a fluctuating pension based upon an intermediate salary rate as provided in the various ordinances throughout the period from September 1, 1948, to September 1, 1954, to wit, the "d" rate of pay as currently provided for their respective positions in case of all defendants except Captain Wright, whose pension should be based on the "c" rate of pay, and that appellants were "not entitled to have their fluctuating monthly pensions based upon the highest salary which had been provided for and paid to the active members of the police department who have held the same rank or position as those previously held by said defendants, respectively, for one year or more at the time of their respective retirements. . . ." It is from this declaratory judgment that these retired police officers appeal.

Appellants contend that a proper construction of section 187, subdivision 2, of the city charter requires the payment of a monthly benefit based upon the highest salary currently provided for and paid to active employees of the same rank as that held by them for one or more years prior to retirement.

The position of the city is revealed by the following statement from its brief: "The interpretation given to the charter section by officials of the respondent City, which interpretation was concurred in by the trial court, provides for the payment of a pension to the appellants based on the salary presently paid to the employees during their first year of service in the promotional ranks. Any increase thereafter is dependent upon the recommendation of the head of the department and the City Manager, as all employees in the promotional ranks involved in this appeal were filling positions with salaries fixed at either the 'c' or 'd' rate."

It is well settled that pension provisions are to be liberally construed in favor of the applicant. (*Gibson* v. *City of San Diego,* 25 Cal.2d 930, 935 [156 P.2d 737]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698, 702 [263 P.2d 833]), and that employees of a city whose charter provides pension benefits for its employees, as does the city of Long Beach, acquire vested contractual rights in a pension since it is a part of their compensation. (*Allen* v. *City of Long Beach,* 45 Cal.2d 128 [287 P.2d 765].) When such an employee has been retired after rendering the called-for performance "[t]he pension has been fully earned, the obligation of the city is no longer conditional. It is a contract protected by constitutional guaranties . . ." (*English* v. *City of Long Beach,*

126 Cal.App.2d 414, 419 [272 P.2d 875].) Such a pension may not be changed to the recipient's detriment. (*Terry* v. *City of Berkeley, supra,* p. 703; *English* v. *City of Long Beach, supra.*)

■ We now apply these principles to the factual situation at hand. Upon their retirement appellants had fully performed their contract and had earned their pensions. Each of them was then receiving the highest salary for his particular rank. Each had achieved this top position on a promotional basis after serving a probationary period. Their contract with the city was, in effect, that they would receive a fluctuating pension based on the current salary of the man who held the same position they had held one year prior to their respective retirements. Since each of them held a top position in his particular rank, it is reasonable to consider his current counterpart as the person who holds the highest position in that rank, and to base the fluctuating pension of the former upon the salary of the latter. Thus equality of position between the retired and the current employee is maintained, and the degree of the former's achievement continues to be recognized and appropriately rewarded so that he may "maintain a fairly constant standard of living despite changes in our economy." (*Allen* v. *City of Long Beach, supra,* p. 132.) In this manner, the matured contract between the appellants and the city is carried out and the appellants get the full benefit of the fluctuating feature of the pension plan. This result is in harmony with the principles stated in the Terry and English cases, *supra.*

The salary ordinance of September 1, 1948, and subsequent ordinances divided the positions appellants held upon retirement into various gradations with different salaries and imposed conditions for reaching the top grade and highest salary for the particular rank, which appellants could not possibly meet since they had already retired. Under the theory of the city, inspectors and lieutenants with appellants' seniority would fall into the "c" salary rating except for the fact that this classification carried a smaller salary than that paid under the former salary ordinance, and the new ordinance provided that in the transition an officer must not be paid less than he had been receiving. In order to comply with this provision it was necessary to place inspectors and lieutenants in the "d" salary bracket. It is upon this theory that appellants, except Captain Wright, were paid a pension based on the "d" rate of pay under the new ordinances.

Under the salary ordinance prior to the transition, a captain of police was paid $400 a month. The ordinance of September 1, 1948, placed the ''c'' rating for captain at $403. Since a captain with Wright's seniority would be placed in the ''c'' salary bracket upon the transition, his pension was based upon that salary. It is thus apparent that by the subdivision of appellants' positions and the application of the ordinance by the city, the positions of appellants were down-graded.

In addition, the ordinance required the recommendation of the chief of police and approval of the city manager for an officer to move up from the ''c'' and ''d'' salary rates. Since appellants had retired prior to the adoption of the ordinance they could not comply with this condition. The city, therefore, took the position that their pensions could not be based upon any salary level which involved an application of the merit rating plan. ██ Although at the time of their retirement appellants were receiving the highest salary for their respective positions and were paid a pension on that basis, yet under the new setup these men were not and could never become eligible for a pension based on the top salary currently paid to the officers holding the same positions from which they retired.

It is therefore obvious that the new ordinance as applied by the city operated to the detriment of appellants and violated the vested contractual pension rights they had acquired upon their retirement. This is contrary to the principles announced in the Terry and English cases, *supra*.

The basic difficulty with the city's position is that it has failed to recognize that appellants' pension rights matured upon their retirement and that being contractual in character they cannot thereafter be changed to their disadvantage.

The city argues that ''the contention of appellants, if adopted, would require the payment of compensation never earned by the employee,'' and that ''there is no obligation to pay for services which never were performed.'' These arguments are specious. It is true, of course, that pensions represent deferred compensation. The difficulty, however, with the city's position is that it would have appellants' pension rights measured by a salary ordinance that simply is not and never was applicable to them. Appellants' retirement benefits were acquired on a different contractual basis. Under the terms of that contract they performed the required services and earned their deferred compensation.

The city complains that if the position of the appellants is

sustained the result will be that they will receive larger pensions than officers who now retire with the same seniority in the particular rank. This may be true (except as to Inspector Cope and Lieutenant Wombacher who apparently were entitled to an ''e'' salary rate insofar as seniority was concerned), but the explanation and justification lies in the fact that the current employees are earning their retirement benefits under requirements that are different from those under which appellants earned theirs. This, of course, does not justify an erosion of the benefits due the latter by a process of reasoning which brings them into precise line with those of the former group.

Appellants are entitled to a pension since September 1, 1948, based on the ''e'' salary rate of the respective ranks from which they retired.

The judgment, insofar as it related to Cope, Hoyt, Smith, Wigney, Wombacher and Wright, is reversed and the trial court is directed to enter a judgment in accordance with the views herein expressed.

Moore, P. J., and Ashburn, J., concurred.