[Civ. No. 23791.   Second Dist., Div. Three.   Feb. 19, 1960.]

RUTH ABBOTT et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

[Civ. No. 23792.   Second Dist., Div. Three.   Feb. 19, 1960.]

EVA A. ADAMS et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

[Civ. Nos. 23793, 23794.   Second Dist., Div. Three.   Feb. 19, 1960.]

MARGARET ABNEY, as Special Administratrix, etc., et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

[Two Cases.]

[Civ. Nos. 23795, 23796.   Second Dist., Div. Three.   Feb. 19, 1960.]

CATHERINE M. BEHRNS, as Administratrix, etc., et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Appellants.

[Two Cases.]

[Civ. No. 23797.   Second Dist., Div. Three.   Feb. 19, 1960.]

ELIZABETH M. MASON et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

Kenneth Sperry for Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and John J. Tully, Jr., Assistant City Attorneys, for Respondents.

SHINN, P. J.—By five actions, which were consolidated for trial, a number of retired members of the police and fire departments of the city of Los Angeles (*Abney, Behrns*), and a number of widows of retired members (*Abbott, Adams, Mason*), sought to establish and enforce rights to a pension computed upon a fluctuating rather than a fixed basis.

In *Abbott* v. *City of Los Angeles*, 50 Cal.2d 438 [326 P.2d 484], a prior appeal, the Supreme Court held that amendments to the Los Angeles City Charter enacted in 1925 substituting a fixed pension for a fluctuating pension were invalid as to the previously employed retired members, that similar charter amendments enacted in 1927 were invalid as to the widows of such retired members, and that plaintiffs were entitled to receive fluctuating pensions. Judgments adverse to plaintiffs entered after a court trial were reversed with directions to the trial court to enter judgments in their favor for past due pension payments ''in accordance with the conclusions declared in the foregoing opinion, if the court finds that it can do so upon the present record, and, if not, then the court is directed to take such further evidence as may be necessary to compute the amounts due to each plaintiff, to make such computations, and thereupon to enter judgments accordingly.'' (50 Cal.2d at p. 468.)

Pursuant to these directions and to plaintiffs' motions for entry of judgment the court took additional evidence,[1] awarded a judgment to each plaintiff or to his legal representative and ordered payment of a fluctuating pension. We have for consideration cross-appeals by the city and by plaintiffs from certain judgments and parts of judgments to be decribed hereinafter.

We shall first discuss the appeals of the city from judgments in the Abney and Behrns cases entered November 13, 1958, determining that 14 of the 673 members in the former case and one of the 30 members in the latter case were entitled to receive a fluctuating pension and awarding past due pension payments to the members or to their legal representatives.[2]

---

[1] The evidence consisted of a book of computations, the service records of certain members, copies of city ordinances and civil service regulations and other evidence received by stipulation.

[2] The members affected by these appeals are: In the Behrns case, Stephen P. Schmitt; in the Abney case, Edmund Burke, Charlie O. Peters, William F. Sewell, Gregory A. Watry, William B. Ferris, Rob-

The complaints in *Abney* and *Behrns* alleged that each of the plaintiffs appearing therein had been duly employed and appointed to a position in either the police or fire department of the city of Los Angeles prior to July 1, 1925, which was the effective date of the 1925 charter amendments. (Charter of 1925, art. XXXII, § 435; Stats. 1925, p. 1151.) The truth of these allegations was expressly admitted in the answers filed by the city. Upon the first trial, the court found that each member served continuously from the date of his employment until the date of his retirement. In upholding the right of each member to receive a pension computed upon a fluctuating basis, the Supreme Court ruled that the change from a fluctuating to a fixed pension constituted an unreasonable and invalid modification of the members' vested contractual rights. However, it is now contended by defendant that the pension rights of the above-listed 15 of the retired members are governed by the 1925 amendments.

The name, rank, aggregate period of service and the date of the employment and retirement of each member plaintiff were set out in lengthy exhibits attached to the complaints in the Abney and Behrns cases; the exhibits also listed the amount of the fixed monthly pension currently being paid to each plaintiff, the amount allegedly due and the total amount of past due pension payments sought to be recovered. By stipulation of the parties prior to the first trial, the exhibits were amended to correct factual errors contained therein. The stipulations also provided: "It is further stipulated and agreed that the foregoing stipulation is subject to the right of either party to have corrections made of any further errors which may be discovered by either of the parties hereto."

At the hearing upon plaintiffs' motion for entry of judgment following the decision of the Supreme Court, defendant made a motion to amend the stipulations correcting the exhibits and the corrected exhibits; the motion related to the 14 pensioners in *Abney* and the single pensioner in *Behrns*. The proposed amendments were as follows: (1) Three of the pensioners were firemen in the employ of the city of Venice on July 1, 1925 and did not become employes of the city of Los Angeles until the cities were consolidated nearly five months later; (2) The remaining 12 pensioners had resigned from their positions with the city of Los Angeles and were

ert A. Glaze, Thomas K. Parry, Evert S. Gowling, deceased, George W. Whaley, deceased, Charles C. Edmonds, Albert C. Stromwall, I. C. Dunnington, Michael J. McAndrews and Earl W. Mehner.

reappointed subsequent to July 1, 1925. Over plaintiffs' objection the motion was granted and defendant was permitted to introduce in evidence the service records of the 15 pensioners. The evidence received at the hearing established, as to each of the resigned employes, that he was restored to a civil service eligibility list at his own request and without examination after July 1, 1925, that he was appointed to a position from the list, and that he served another probationary period as a new employe of the city. As to the Venice employes, the evidence established that the city of Los Angeles took over and operated the existing fire stations in the Venice area. Upon his becoming eligible for retirement, an irrevocable certificate of service was issued by the pension board to each of the 15 giving him full credit toward his retirement pension for time served prior to July 1, 1925, as an employe either of the city of Venice or of the city of Los Angeles.

The court entered judgments in favor of the 15 upon a theory that defendant is estopped from denying them a fluctuating pension. The grounds of estoppel were that the members were given credit for time served prior to July 1, 1925, in determining their pension rights and that they relied on the service certificate issued by the city in applying for a pension.

It is clear that the 12 resigned members lost their right to receive a fluctuating pension by reason of their resignations. The voluntary resignation of a municipal employe terminates all rights and duties of his employment and upon a rehiring he enters into a new contract with his employer. (62 C.J.S. 1502-1503; *Board of Trustees of Firemen's Pension Fund* v. *State,* 205 Ind. 557 [187 N.E. 330, 89 A.L.R. 680]; *Doering* v. *Hinrichs,* 289 N.Y. 29 [43 N.E.2d 709].) Although the members had a vested right to a fluctuating pension by virtue of their original contracts of employment they lost it by quitting their positions before completion of the period of service necessary to qualify them for retirement. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848, 853 [179 P.2d 799]; *Board of Trustees of Firemen's Pension Fund* v. *State,* 205 Ind. 557, *supra* [187 N.E. 330, 89 A.L.R. 680].) The rule is manifestly a fair one. If it were otherwise, then an employe appointed while a fixed pension plan was in force and who later resigned and was reappointed under a new contract providing for a fluctuating pension would be compelled to accept a fixed pension upon retirement.

It is also clear that the three former Venice em-

ployes acquired no pension rights from the city of Los Angeles before the change to a fixed pension plan and that their right to receive a pension is governed by the charter provisions in effect at the time of their employment by defendant.

But the pensioners urge that the court was required to award them a fluctuating pension even though the evidence adduced at the hearing conclusively established that they are not entitled to one. They contend that the decision on the prior appeal is res judicata as to the right of all plaintiffs in the five cases to receive a pension on a fluctuating basis, that the retrial was ordered for the sole purpose of determining the amount of money to be awarded to each, and that had the trial court given effect to the evidence destructive of their right of recovery it would have exceeded the limited power conferred on it by the terms of the remittitur. If this construction of the remittitur were the correct one, we would, of course, be without power to disturb the judgments. However, we do not believe that it is the correct construction. We cannot agree that the decision of the Supreme Court must be interpreted in so narrow a fashion.

The question whether the 15 pensioners had served continuously with the city was not in issue before the Supreme Court and that court was not called upon to decide it. Although the breaks in service were shown in the exhibits, their significance was overlooked by the parties and was not called to the attention of the court. The question did not arise until the retrial. The trial court was directed to receive evidence necessary to compute the amounts due to each plaintiff and that is exactly what was done. With respect to the three Venice employes and the 12 having breaks in service, the evidence showed that no amount was due. It is obvious that the Supreme Court did not intend to preclude either of the parties from introducing relevant evidence which might assist the trial court in a final and just disposition of the cases in accordance with any new facts to be developed which might affect the judgments. Furthermore, the claim of res judicata ignores the stipulations permitting correction of errors appearing in the exhibits which summarized the pensioners' records of service. The inadvertent omission of material facts would constitute such errors. With respect to the three Venice employes the record was corrected by the addition of the fact that there had been included in their terms of service the time spent in the service of Venice. As to the other 12 the correction consisted of the facts respecting the various resig-

nations and reappointments which had not previously been shown.

A second contention advanced in support of the judgments is that defendant is estopped to refuse the 15 members a fluctuating pension for the reason that they received credit for service prior to July 1, 1925, in determining their right to a pension. As we have said, this view was adopted by the trial court. In our opinion this was error.

The charter provisions in force prior to July 1, 1925, allowed retirement for service after 30 years' employment "in the aggregate" at 66⅔ per cent of the salary attached to the rank or position held by the member and after 20 years' employment at 50 per cent. (Charter of 1889, art. XI½, § 2, as amended; Stats. 1923, p. 1412.) The amendments effective on that date likewise refer to aggregate years of service. (Charter of 1925, art. XVII, § 181; Stats. 1925, p. 1085.) Under Los Angeles City Ordinance Number 67778, enacted in 1930, members of either department who have completed the requisite aggregate years of service are entitled to a certificate evidencing that fact. This right is a vested one and is not subject to forfeiture. (*Skaggs* v. *City of Los Angeles,* 43 Cal. 2d 497 [275 P.2d 9].) But as to the 12 members who resigned and were reemployed after July 1, 1925, the right to a certificate after completion of the required years of service was based upon the new contract of employment entered into with defendant, not upon the old contract which terminated when they resigned. Thus, there is no basis for a contention that the issuance of a service certificate to the 12 resigned members gave rise to an estoppel against the city.

As to the three Venice employes, the record discloses that credit for prior service was authorized by the pension board in reliance upon the opinion of the city attorney that such credit should be given because of the consolidation of the two cities. (See *Riggs* v. *District Retirement Board,* 21 Cal.2d 382 [132 P.2d 1].) But their right to a certificate was likewise based upon their contract of employment, and as we have pointed out, they were hired by the city after the fixed pension system had gone into effect.

We conclude, therefore, that as to the 15 plaintiffs, the judgments challenged by defendant cannot be permitted to stand.

We shall next consider plaintiffs' appeal from adverse portions of all the judgments entered in all five cases. It is contended that the court in determining what constituted the

"salary" which formed the basis of the pensions was in error in excluding the compensation in the top salary bracket for each position upon the theory that it was something other than salary. The court held that so-called "longevity" and "merit" pay, to be hereafter explained, do not constitute a part of the "salary attached to the rank or position" formerly held by retired or deceased members for the purpose of computing the fluctuating pensions to be paid to the members or to their widows and that the same should be excluded in computing the amount of pension payments owed by the city. The ensuing discussion, however, does not apply to those resigned members and former employes of the city of Venice whom we have held entitled to receive only a fixed pension.

By Ordinance Number 89935, enacted in 1945, the city adopted a salary schedule for members of the police and fire departments. Members holding promotional positions in either department were to receive a salary at a flat monthly rate, while other members holding the position of fireman, policeman or policewoman were to be compensated on a four-step basis. A similar schedule had been in effect since 1925.

Section 14.3 was added to the 1945 enactment by Ordinance Number 108494, effective January 13, 1957. The new section provided for additional compensation to policemen, policewomen and firemen in the form of "longevity" pay based upon aggregate years of service; after 10 years, the member would receive an additional $13.50 per month, after 15 years, an additional $27, and after 20 years, an additional $41.50 per month. By a later ordinance, effective July 1, 1957, the respective amounts were increased to $14.50, $29 and $44 per month. But payment of this additional compensation was made conditional upon a certificate of the chief administrative officer of the department that the member's standard of service has been satisfactory. And subdivision 2 of section 14.3 reads: "It is the intent of the Council in enacting this section that the longevity pay herein provided for shall be construed and deemed to be a privilege earned by merit and not a right, and if at any time any member's service is unsatisfactory, the Chief Administrative Officer of the Fire Department or the Police Department shall so certify to the Controller and upon such certification the payment of longevity pay for such member shall thereupon cease until such time as the Chief Administrative Officer of his department again certifies that such member has achieved a satisfactory standard of service."

Ordinance Number 89935 was further amended by Ordinance Number 110679, effective February 3, 1958, whereby a five-step salary schedule was adopted for all positions in either department, promotional or otherwise. The longevity pay provisions of the 1957 ordinance were not changed. However, with respect to members holding promotional positions, subdivision (h) of the new ordinance provided: "Receipt of salary at the maximum or fifth step rate is a privilege to be earned and retained on the basis of merit, and not a right. No member . . . may receive salary at the fifth step rate until the Chief Administrative Officer . . . certifies . . . that the member has completed the required period of service in his class and further certifies either: (1) that he finds the member's standard of service to be satisfactory; or (2) that a majority of the departmental deputy chiefs, sitting as a board of review, finds his standard of service to be satisfactory." Provision was also made for a decrease in salary from the fifth to the fourth step of those members whose service has been found to be unsatisfactory.

At the hearing it was stipulated that each pensioner or member whose service formed the basis of a widow's pension was receiving the highest rate of pay applicable to his particular position at the time of his retirement and for at least one year prior thereto and also that the retirements occurred during the interval when the city ordinance provided a flat salary for holders of promotional positions and a four-step salary rate for policemen, policewomen and firemen. It was further stipulated that all but one of the 2,000 active firemen eligible to receive longevity pay were receiving it at the time of the hearing; that of the 3,220 eligible policemen, only one was not receiving longevity pay; that every eligible policewoman was receiving longevity pay; that 961 of the 963 eligible holders of a promotional position in the fire department were receiving merit pay at the fifth step; and that only one of the 1,083 eligible holders of a promotional position in the police department was not receiving merit pay.

In excluding provision for longevity and merit pay, the court, with two exceptions, based the judgments and pensions awarded to promotional officers or their widows upon the fourth salary step. We shall consider the exceptions at a later point in our opinion.

We think that longevity and merit pay constitute a part of the "salary attached to the rank or position" formerly held by the retired or deceased members and that it was

error for the court to disregard them in its computation of the pensions to be paid and the judgments awarded.

It cannot be doubted that this compensation is a part of the salary of those members of the departments who are currently receiving it. Under section 186½ of the city charter, as amended in 1947 (Stats. 1947, p. 3686), 6 per cent of the ''salary'' of each active member must be deducted from his paycheck and deposited to the account of the pension fund. And it was stipulated by the parties that longevity and merit pay were treated as salary for the purpose of making the deductions.

Conceding, as it must, that longevity and merit pay are part of the member's salary for the purpose of such contributions, defendant contends nevertheless that the additional compensation is independent of the mere occupancy of a position and is payable solely on the basis of the member's personal merit. Defendant says in its brief: ''Actually what is involved in the cases at bar is more in the nature of an incentive bonus which as a practical situation should not be considered salary attached to the rank or position for pension purposes.'' But although under the salary ordinances active members are not entitled to receive either longevity or merit pay as a matter of right, that circumstance does not, as we shall see, affect the pension rights of the retired members or their widows.

Plaintiffs urge that the recent case of *City of Long Beach* v. *Allen,* 143 Cal.App.2d 35 [300 P.2d 356], establishes their right to have longevity and merit pay included in the calculations of their pensions. We agree. In the Allen case the appellants were retired police officers of the city of Long Beach who at the time of their retirement were receiving the highest salary then payable to active holders of the same rank. Subsequent to their retirement on fluctuating pensions Long Beach enacted a new salary ordinance providing five rates of pay for each position in the department; the fourth and fifth steps were merit increases to be given only upon recommendation of the chief of police and approval of the city manager. It was contended by Long Beach in that case that the pensions payable to the appellants should not be based upon the highest salary rate provided by the new ordinance because the fourth and fifth steps were attainable only through the recommendation of city officials, a condition the appellants could not possibly fulfill. The court rejected this contention at page 40 of 143 Cal.App.2d in language which

is determinative of the question at hand: "In addition, the ordinance required the recommendation of the chief of police and approval of the city manager for an officer to move up from the 'c' and 'd' salary rates. Since appellants had retired prior to the adoption of the ordinance they could not comply with this condition. The city, therefore, took the position that their pensions could not be based upon any salary level which involved an application of the merit rating plan. Although at the time of their retirement appellants were receiving the highest salary for their respective positions and were paid a pension on that basis, yet under the new setup these men were not and could never become eligible for a pension based on the top salary currently paid to the officers holding the same positions from which they retired.

"It is therefore obvious that the new ordinance as applied by the city operated to the detriment of appellants and violated the vested contractual pension rights they had acquired upon their retirement. This is contrary to the principles announced in the Terry and English cases, *supra.*

"The basic difficulty with the city's position is that it has failed to recognize that appellants' pension rights matured upon their retirement and that being contractual in character they cannot thereafter be changed to their disadvantage."

Defendant attempts to distinguish the Allen case upon the ground that the Long Beach ordinance did not provide that merit pay could be taken away from a member once he began to receive it while the Los Angeles ordinances provide that longevity or merit pay may be discontinued because of a member's unsatisfactory service. We consider the distinction an immaterial one. To limit plaintiffs' pension rights upon a theory that active members may lose the additional compensation would be to disregard the fact that all but an infinitesimal number of the thousands of eligible active members are currently receiving it and would require indulgence in an unwarrantable assumption that the pensioners and their deceased husbands had given unsatisfactory service throughout their careers without disciplinary action by the city. To do so would also require us to disregard the primary purpose of the fluctuating pension plan, which is to guarantee the pensioner or his widow a fairly constant standard of living despite the inflationary tendencies of the economy and to maintain equality of position between the retired member and the person currently holding the rank attained

by the pensioner before his retirement. (*Allen* v. *City of Long Beach,* 45 Cal.2d 128, 132 [287 P.2d 765]; *City of Long Beach* v. *Allen, supra,* 143 Cal.App.2d 35, 39.)

We conclude, therefore, that the judgments appealed from were computed upon an erroneous basis and that plaintiffs, other than the 15, are entitled to entry of judgments for pensions and past due pension payments reflecting longevity and merit pay.

We shall next consider the appeals of certain individual plaintiffs in *Abney* and *Adams.* The city has made no mention of these appeals in its brief.

The first appeal to be discussed is by Rosa Belle McCarbery from a separate judgment in the Adams case entered September 15, 1958, awarding her a widow's pension and past due pension payments upon the basis of the third salary step currently attached to the position of assistant fire chief, the one held by McCarbery when he died in active service in 1947.

It was stipulated at the hearing that McCarbery had held the position of assistant fire chief for less than a year prior to his death. Judgment was entered limiting Mrs. McCarbery's pension to the third step upon the ground that under presently existing provisions an active member with less than a year's service as assistant fire chief is paid at the third step of the five-step salary schedule, hence the pension due Mrs. McCarbery must be calculated on the same basis. However, the theory is untenable. It is in conflict with the Allen case and with one of the major purposes of a fluctuating pension, namely, to equalize the economic status of pensioners and their counterparts in active service. We have already pointed out that members holding promotional ranks were compensated at a flat monthly rate until the 1945 ordinance was amended in 1958 to provide a five-step salary scale for all members of the department. When McCarbery died in 1947, he was receiving the highest salary he could have earned as assistant fire chief. His counterpart among current members who have attained that rank is one earning the highest salary attached to the position, i.e., a member who is earning merit pay. In our opinion, the judgment appealed from cannot be sustained and judgment and pension must be recalculated on the basis of the fifth step in the salary schedule.

Also requiring consideration is an appeal of Paul L. Bohanan from that part of the judgment entered September 15, 1958, in the Abney case awarding him a pension

and past due pension payments upon the basis of the third salary step currently attached to the position of police sergeant.

Evidence was received by way of stipulation that Bohanan held the rank of sergeant one year prior to the date of his retirement; his appointment to sergeant was terminated and he was reduced to the rank of policeman which he held when he retired. Bohanan was a sergeant for less than six months; during that time there was only one salary rate provided for sergeants of police.

The disposition of the appeal is governed by the principles to which we referred in our discussion of the appeal of Mrs. McCarbery. Since Bohanan held the position of sergeant one year prior to his retirement, he received a sergeant's pension even though he retired at the lower rank. (Charter of 1889, art. XI½, § 2, as amended; Stats. 1923, p. 1412.) And since he was then receiving the highest salary attached to the rank of sergeant it was error to compute the judgment and pension to be awarded him upon the basis of the third salary step instead of the fifth.

The judgments and pensions awarded in the five actions were calculated as of the date of the hearing upon the basis of the tables contained in a book of computations which was in evidence. With respect to each plaintiff, the tables listed the amount of pension now being paid, the amount of the fluctuating pension to which he or she is entitled, calculated both with and without provision for merit or longevity pay, and the amount of past due pension payments, also calculated both with and without provision for longevity or merit pay. Upon the remand it will be the duty of the court to recompute the pensions and judgments to be awarded to the plaintiff Bohanan and the plaintiff McCarbery as the amount of the judgments in their favor was determined upon the erroneous assumption that each was entitled to a pension based on the third step in the salary schedule. If any further question should arise as to the accuracy or adequacy of the computations for the purpose of entering judgments it shall be the duty of the court to make such further computations as may be necessary.

In the cases of *Abbott, Behrns, Abney, Mason* and *Adams,* the judgments are reversed with directions to the trial court to enter judgments therein in accordance with the conclusions declared in the foregoing opinion.

On the appeals of the pensioners, plaintiffs-appellants are awarded costs; on the appeals of defendants no costs are awarded.

Vallée, J., and Ford, J., concurred.

Appellants' petitions for a rehearing were denied March 17, 1960, and their petitions for a hearing by the Supreme Court were denied April 13, 1960.