[Civ. No. 27005. First Dist., Div. Four. May 11, 1970.]

KENNETH I. DUNHAM et al., Plaintiffs and Appellants, v.
CITY OF BERKELEY et al., Defendants and Appellants.

510

**COUNSEL**

Howard W. Wayne for Plaintiffs and Appellants.

Robert T. Anderson, City Attorney, and Robert P. Berkman, Assistant City Attorney, for Defendants and Appellants.

**OPINION**

**CHRISTIAN, J.**—Plaintiffs (retired Berkeley policemen or widows of retired policemen) sought both a declaration defining disputed pension rights and a money judgment for accrued, unpaid pension benefits. The trial court gave judgment for plaintiffs. Defendants (the City of Berkeley and its Police Employees Pension Board) appeal from the judgment; plaintiffs cross-appeal, contending that the court's award was inadequate.

Each plaintiff or deceased husband of a plaintiff began service in the Berkeley Police Department prior to June 16, 1944. Their pension rights vested under a plan then in effect known as a "fluctuating" plan in which benefits are based on "the average salary attached to the respective rank or ranks held during the three years immediaely preceding the date of retirement, . . ."[1] The benefit therefore increases with the salary of an active member occupying the applicable rank. (*Terry* v. *City of Berkeley* (1953) 41 Cal.2d 698 [263 P.2d 833].) The present appeal presents the question whether plaintiffs are entitled to benefit from salary increments provided by a new "Senior Patrolman" and "Career Incentive" program established in the police department.

Before the new program was instituted, there was one rank of patrolman with five salary steps; progression was automatic with length of service, and the fifth step was reached after four years of service. The higher ranks, such as sergeant, inspector, lieutenant and captain, had only one salary step each.

---

[1]Ordinance No. 2250-N.S. In 1944, Berkeley changed to a "fixed" pension system in which retirement benefits are geared to the average salary received by the individual employee during the three years immediately preceding the date of his retirement. (Ordinance 2626-N.S.) This change is inapplicable to policemen employed prior to June 14, 1944. (*Glaeser* v. *City of Berkeley* (1957) 148 Cal.App.2d 614 [307 P.2d 61].)

In 1964, the Senior Patrolman classification was established. The stated purpose was "to provide advancement opportunities for senior officers who endeavor to improve their individual proficiency by participating in a program of continuous in-service training." A patrolman with at least four years' experience could receive a Senior Patrolman classification with a salary 5 percent higher than top step patrolman if he participated on his own time in at least 50 hours per year of departmental training courses, courses at educational institutions, teaching, public speaking activities or research projects.

In 1967 the Career Incentive program was established, extending the concept of increased pay for training to the higher police ranks.[2] Classifications I, II, III and IV were added to each of the basic ranks (including Senior Patrolman).[3] Thus, where previously there was a single rank of Sergeant, there now is Sergeant, Sergeant I, Sergeant II, Sergeant III and Sergeant IV. A "I" classification requires 10 years of service and training; each upward step represents 5 years more training rewarded by a 2½ percent increase in pay, so that a "IV" classification is earned after 25 years of participation in the program. All years of service were counted as years of qualifying training for police officers enrolled at the inception of the Career Incentive program. Therefore, a sergeant with 15 years' service received a new classification of Sergeant II if he enrolled in September 1967. Thereafter, only years of actual training counted toward the pay increases.

Enrollment in the program is not automatic; eligible employees must volunteer. Classifications are awarded for one year; to retain his class and pay status, the officer must qualify annually by participating in the required hours of training. Training time may be waived by the department when duty requirements limit the time available for training.

Before the Senior Patrolman and Career Incentive program was established, the department provided continuous training for its employees. The hours and type of training have not changed significantly since the incentive program was established. The principal difference is that policemen now receive higher pay for participation, while previously they received compensating time off. Under the new system, policemen choosing not to enroll in the Senior Patrolman and Career Incentive program can still attend training courses and receive time credit as before; the courses available to those

---

[2] The Senior Patrolman classification and Career Incentive program were established by police department order number P-23500, issued January 17, 1964 and amended August 21, 1967. Authorization was provided by Ordinance No. 2342-N.S., as amended.

[3] A patrolman with at least four years of service is eligible for Senior Patrolman status. A Senior Patrolman, after three consecutive years in that classification, becomes eligible for the Career Incentive program.

in the program and not in the program are the same. Duties of policemen have not changed.

All eligible officers have applied for Career Incentive status; all but one eligible patrolman have enrolled for Senior Patrolman status. Several policemen who enrolled initially have dropped out. All of the plaintiffs or their husbands would have been eligible, by years of service, to participate.

The city's position is that the Senior Patrolman and Career Incentive classifications are new ranks and that the retired employees are therefore not entitled to a pension increase. The trial court decided that the essential factor in determining whether a patrolman is classified as Senior Patrolman, or whether an employee receives a pay raise provided by the Career Incentive program, is length of service. Concluding that the new system added salary groupings within each rank rather than new ranks, the court ruled that plaintiffs are entitled to pensions reflecting the higher salaries paid to participants in the Senior Patrolman and Career Incentive plan. The judgment declared: (1) each plaintiff's pension should be based on the salary now available to an active policeman, with the years of service at which the pensioner retired, who has participated in the program; (2) pensions are to be computed by using a weighted average of the salaries attributable to the three-year period immediately prior to retirement. Plaintiffs were awarded judgment for past accrued and unpaid benefits.

There was evidence that the city intended to establish new ranks that would not be applicable to retired employees. The salary schedule recommended by the personnel board was expressed in terms of pay steps within ranks; the city council in its salary resolution changed these designations to separate ranks without changing the salary recommendation. It was apparently hoped that a pension increase for retired policemen would thereby be avoided. But the city's intent is not necessarily determinative. ■ Pension provisions are, unless excluded by agreement, part of the contemplated compensation of the city employee and therefore a consideration of the employment contract. (*Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 852 [179 P.2d 799]; *Malone* v. *City of Los Angeles* (1954) 126 Cal.App.2d 447, 451 [272 P.2d 796].) ■ A retired employee has a contractual right, protected by constitutional guarantees, in a pension; his benefits may not be changed to his detriment. (*Meinheit* v. *City of Berkeley* (1960) 179 Cal.App.2d 492, 495 [3 Cal.Rptr. 821]; *City of Long Beach* v. *Allen* (1956) 143 Cal.App.2d 35, 38-39 [300 P.2d 356].) ■ Pension provisions are to be liberally construed in favor of the pensioner. (*Terry* v. *City of Berkeley* (1953) 41 Cal.2d 698, 702 [263 P.2d 833]; *City of Long Beach* v. *Allen, supra,* at p. 38.) ■ The primary purpose of a fluctuating pension plan is to guarantee the pensioner and his

widow a constant standard of living and to maintain equality of position between the retired member and the person currently holding the same rank. (*Abbott* v. *City of Los Angeles* (1960) 178 Cal.App.2d 204, 215-216 [3 Cal.Rptr. 127].)

*Abbott* v. *City of Los Angeles, supra,* and *City of Long Beach* v. *Allen, supra,* involved fluctuating pension plans. In both cases, after the plaintiffs' retirement, the cities adopted a "longevity-merit pay" plan which provided additional pay, based on years of service, to employees whose work was certified as satisfactory. The Los Angeles plan also provided that an individual's longevity and merit pay would cease if his service later became unsatisfactory. In both cases, it was held that the merit pay constituted a part of the "salary attached to the rank or position" formerly held by the retired members and must be considered in computing pensions. The courts rejected the cities' contention that the plaintiffs were not entitled to increased pensions because they had not performed the condition of certified satisfactory service required of active members. In *Allen,* the court stated: "[T]hese men were not and could never become eligible for a pension based on the top salary currently paid to the officers holding the same positions from which they retired.

"It is therefore obvious that the new ordinance as applied by the city operated to the detriment of appellants and violated the vested contractual pension rights they had acquired upon their retirement. . . .

". . . The difficulty . . . with the city's position is that it would have appellants' pension rights measured by a salary ordinance that simply is not and never was applicable to them. Appellants' retirement benefits were acquired on a different contractual basis. Under the terms of that contract they performed the required services and earned their deferred compensation." (*City of Long Beach* v. *Allen, supra,* 143 Cal.App.2d 35, 40.) One of the factors relied on by the court in *Abbott* was the fact that all but a small percentage of the active employees were receiving the merit pay.

In *Baldwin* v. *City of San Diego* (1961) 195 Cal.App.2d 236 [15 Cal. Rptr. 576], the court rejected the pensioner's contention that she was entitled to the benefit of a new 5 percent pay rate added to the highest regular salary paid for her position. The extra pay was available to employees who were subject to duty on legal holidays without compensating time off or to night work or a split shift. The court distinguished *Abbott* and *Allen* by noting that in those cases the retired employee had actually performed all the service for which later certification was provided. In *Baldwin,* there was no evidence that the pensioner had performed, while she was employed, the extra services now being compensated. (195 Cal.App.2d at p. 245.)

The present case falls between the *Abbott* and *Allen* cases and

*Baldwin.* Like *Baldwin,* the Senior Patrolman and Career Incentive pay increases are available only to persons who perform an additional duty, that of extra hours of training without compensating time off. But like *Abbott* and *Allen,* the program allows all employees with sufficient years of service to participate and receive increased compensation. The incentive program is not designed for a small number of employees, as in *Baldwin,* but may reasonably be termed a system of general pay raises. There was evidence that one of the main purposes of the program was to retain experienced personnel by making a career in the Berkeley Police Department more attractive financially; a sergeant would no longer have to wait until he became a lieutenant to get a pay increase but could have his pay raised at regular intervals while he remained a sergeant.

Other factors suggest that regardless of the nomenclature adopted by the city, the new classifications are not separate ranks, but restructuring of ranks. Appointments to the basic ranks (e.g., patrolman, sergeant, lieutenant) require a competitive examination; appointment to Senior Patrolman or a Career Incentive classification requires no examination and is available to any person who meets the longevity requirement and enrolls in training. Moreover, at the beginning of the Career Incentive program, all years of service were counted as training time. Active members who initially enrolled thus received a pay increase based on "training" not necessarily performed. The inequity of not treating retired employees similarly is shown by an example: a sergeant who retired with 28 years' service the day before the Career Incentive program went into effect would receive a pension based on a sergeant's pay. An employee who retired three years later, also with 28 years' service, would have his pension based on the salary of a Sergeant IV—which requires 25 years of training, only three years of which were necessarily performed by the employee. While patrolmen did not receive unearned training credit in becoming Senior Patrolmen in 1964, as Senior Patrolmen they were credited with service time when the Career Incentive classifications were added in 1967. The "grandfather clause" thus adds support to the trial court's determination that the salary increases were primarily based on longevity.

There was evidence also that the plaintiffs had undergone the same training, in nature and amount, for which active members are now being compensated with pay. It is true that the retired employees had been rewarded with compensating time off; but presently active employees had also received time off for training during years of service which later counted toward eligibility in the new programs. Plaintiffs should not be penalized when they did not have the choice, between time off and extra pay, available to presently active policemen. As the trial court noted, "[D]uties change all the time. A police sergeant now is not doing the same duties that the

police sergeants who were retired were doing when they were police sergeants, so minor changes don't make a different position out of it." Plaintiffs performed the services, including training, required of them; they are entitled to their deferred compensation which, under the pension plan, is to be based on the benefits now received by their active counterparts. To hold that these increases do not apply to plaintiffs would defeat the purpose of the fluctuating pension system in maintaining parity between retired and active employees.

We do not say that every incentive program that a city might establish must necessarily result in an increase in the fluctuating pensions. Our conclusion is based on the nature of the particular program in the present case.

█ In their cross-appeal, plaintiffs contend that the court erred in determining that their pensions would be based on the salary of an active member, with the same years of service, who has participated in the incentive program. The trial court's ruling is, for example, that a retired sergeant with 15 years' experience would be entitled to a pension based on the current salary of a Sergeant II. Each of the plaintiffs who were patrolmen retired at the then top step of the patrolman salary scale. Plaintiffs with higher positions were, of course, on the single step then available. Plaintiffs therefore assert that they are entitled to have their pensions based on the highest salary within each rank, that of the "IV" classification.

Planitiffs' cite *City of Long Beach* v. *Allen, supra,* 143 Cal.App.2d 35, and *Abbott* v. *City of Los Angeles, supra,* 178 Cal.App.2d 204. In *Allen,* there was a two-step salary scale, "a" and "b," while plaintiffs were active. After their retirement, the department changed to a five-step scale, "a" through "e." The city based the plaintiffs' pensions on the step corresponding, on the new scale, to their years of service. The court held that since plaintiffs retired with the highest salary then available for their respective ranks, they were entitled to pensions based on the highest salary under the new scale, regardless of whether they had the seniority required of active members. The court reasoned, "Since each of them held a top position in his particular rank, it is reasonable to consider his current counterpart as the person who holds the highest position in that rank, . . ." (*Id.* at p. 39.) *Abbott* reached a similar conclusion.

We are not persuaded by the reasoning of *Allen* and *Abbott* as applied to the present case. The active counterpart of each plaintiff in the present case is not necessarily the person at the top step of his rank; it is, rather, a person with the same years of service. Under the salary system now in effect in the present case, an active member is entitled to a "IV" classification only after he has served 25 years on the force. Plaintiffs are contending in effect that each of them is entitled to a 25-year man's pension, regardless

of actual years of service. The fluctuating pension plan is designed to provide equality of position between retired and active members; plaintiffs are not entitled to greater benefits than those received by counterpart active members. The trial court's disposition of this issue was correct.

Plaintiffs also challenge the trial court's ruling that pensions should be based on the weighted average of the salary levels for the three years immediately preceding the date of retirement. For example, if a pensioner would have been, under the new system, at level III in the year preceding retirement and at level II in the two previous years, his pension would under the judgment be based two-thirds on the current level II salary and one-third on the current level III salary. Citing *Jones* v. *City of Los Angeles* (1967) 251 Cal.App.2d 819 [59 Cal.Rptr. 902] plaintiffs contend that the phrase "average salary attached to the respective rank or ranks held during the three years immediately preceding the date of retirement" provides only for averaging of salaries paid to ranks and not to levels or steps within ranks. Therefore, plaintiffs say, since the trial court considered the Senior Patrolman and Career Incentive groups not to be separate ranks, but steps within ranks, pensions should be based entirely on the salary level at which plaintiffs would have retired. But the use of the word "rank" in the context of the 1939 pension ordinance does not suggest the result sought by plaintiffs. Language is to be construed with reference to the object to be accomplished by it. (*People* v. *United Nat. Life Ins. Co.* (1967) 66 Cal.2d 577, 595-596 [58 Cal.Rptr. 599, 427 P.2d 199] app. dism. 389 U.S. 330 [19 L.Ed.2d 562, 88 S.Ct. 506].) The object of the pension provision was to equate retired members with active members. The ordinance also embodied an intent to consider an individual's status over a three-year period. The trial court's formula accomplishes both objectives. Plaintiffs will receive, consistent with the intent of the ordinance, pensions based on what their active counterparts with the same years of service earn over a three-year period.

The judgment is affirmed. Plaintiffs will recover costs on appeal.

Devine, P. J., and Rattigan, J., concurred.