Filed 2/25/19; Certified for Publication 3/20/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RETIRED OAKLAND POLICE OFFICERS ASSOCIATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> OAKLAND POLICE AND FIRE RETIREMENT SYSTEM et al., <br><br> Defendants and Appellants. | A148987 <br><br> (Alameda County <br> Super. Ct. No. RG-14753080) |

The Oakland Police and Fire Retirement System (retirement system), the retirement system board, and the City of Oakland appeal a judgment granting a writ of mandate in favor of the Retired Oakland Police Officers Association, along with several system members and beneficiaries (collectively, the association) directing that master police officer-terrorism pay (MPO pay) be included in the calculation of pension benefits. Appellants contend the trial court erred in concluding that MPO pay is "compensation attached to . . . rank" as required by the Oakland City Charter for inclusion in pension benefits. We agree and therefore shall reverse the order granting the association's petition.

1

**Background**

A. *The Retirement System*

      The retirement system is governed by article XXVI of the Oakland City Charter.[1] All sworn police officers hired on or before June 30, 1976, are members of the retirement system. Those hired after that date are members of the separate, state-created Public Employee Retirement System.

      Under the retirement system, a retiree's pension is a fixed percentage of the compensation currently "attached to the average rank" held by the retiree at the time of retirement. (Oakland City Charter, § 2607.) "Thus, as the salaries of active firefighters increase, so do the pensions Oakland pays to its retired firefighters. This is a so-called 'fluctuating' pension system." (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 48.) "The primary purpose of a fluctuating pension plan is to guarantee the pensioner a fairly constant standard of living despite inflation, and to maintain equality of position between the retired member and the person (or persons) currently holding the rank the pensioner attained before his retirement." (*Id.* at p. 54.)

B.     *MPO Pay*

      Between September 19, 2009 and June 30, 2015,[2] MPO pay was paid to all officers who met four criteria: the officer must have (1) completed 20 years of service in the Oakland Police Department; (2) maintained fully effective overall performance appraisals during the assignment; (3) attended and completed an approved anti-terrorism/law enforcement response course; and (4) been assigned to the patrol division. Officers who met these criteria were entitled to "a five percent (5%) premium in addition to his/her base rate of pay." Master police officers would "assist patrol officers training in the identification and recognition of terrorism cells" and would "be the direct link

---

[1] The association's request for judicial notice of amendments to the Oakland City Charter in 1969 and 1976 is denied on the ground of relevance.

[2] MPO Pay was introduced as a new pay item in the July 1, 2006-June 30, 2013 memorandum of understanding (MOU) between the City of Oakland and the association and was extended by agreement of the parties to June 30, 2015. MPO Pay terminated with the expiration of the MOUs in 2015 and was not renewed in the successor MOU.

between patrol officers and members of the FBI's joint terrorism task force." The parties agree that entitlement to the premium pay was not dependent upon performing any additional duties. Evidence was presented that suggests that MPO pay was included in the MOU to compensate for concessions active-duty officers were being asked to make regarding their retirement benefits.[3]

The association presented evidence that during the period that MPO Pay was available to qualifying police officers (from 2009 through 2015) virtually 100 percent of police officers with 20 years of service assigned to the patrol division received MPO pay. The retirement system presented evidence that the percentage of officers receiving MPO pay dropped to approximately 46 percent when the pool of potentially eligible active duty police officers was expanded to include officers who could have been but were not assigned to the patrol division.

C.    *Trial Court Proceedings*

The association filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1085, seeking to compel appellants to include MPO pay in calculating benefits for all retirees "in the ranks of police officer, sergeant, and lieutenant, who worked in patrol in their final three years of employment, and had 20 or more years of service at the time of their final three years of employment." The petition alleges, "In November 2013, the [retirement system] board held a hearing on the determination of the proper calculation of retirement benefits for a [retirement system] retiree. The hearing was conducted pursuant to Charter section 2603 to resolve a disputed matter which, among other things, involved [MPO] pay. At the request of the [retirement system] retiree, [MPO] pay was included as compensation attached to the average rank held for purposes of calculating his retirement benefits. A resolution was adopted by the

---

[3] A city employee explained in his deposition that previously Oakland had made a contribution of 9 percent to the retirement fund for active duty officers, but under the new MOU, the officers were required to make that contribution. The MPO pay was designed to partially compensate for that change and encourage senior officers to approve the contract.

[retirement system] board that held that [MPO] pay was compensation attached to the average rank held. [¶] Although it recognized that [MPO] pay was compensation attached to the average rank held for a retiree, the [retirement system] board, did not subsequently adjust retirement benefits for other qualified retirees and beneficiaries despite the fact that these retirees would have been qualified to receive [MPO] pay had they been active. [¶] On August 17, 2014, [the association] sent a letter to the [retirement system] board, requesting that [MPO] pay be included as compensation in the computation of retirement benefits. The letter requested that the item be placed on the board's August 2014 agenda for discussion and further scheduling. [¶] [The association's] request was rejected."

On May 23, 2016, following briefing and a hearing, the trial court held that MPO pay was attached to rank for purposes of pension calculations and granted the association's petition. Appellants timely filed a notice of appeal.

**Discussion**

*1. Standard of Review*

"A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a city to perform a legal, usually ministerial duty. [Citation.] When a court reviews an administrative decision pursuant to Code of Civil Procedure section 1085, it merely asks whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, or whether the agency failed to follow the procedure and give the notices the law requires. [Citation.] In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings. However, we exercise our independent judgment on legal issues, such as the interpretation of statutory retirement provisions." (*Kreeft v. City of Oakland, supra,* 68 Cal.App.4th at pp. 52-53.)

*2. MPO pay was not attached to rank.*

To be considered attached to rank, "compensation must 'adhere to' the rank 'as an appertaining quality or circumstance.' " (*Kreeft v. City of Oakland, supra,* 68 Cal.App.4th at p. 57.) Stated differently, an element of compensation attaches to a rank if "the

4

employee . . . [is] entitled to the compensation by virtue of the rank, and not his individual efforts over and above what are required to obtain the rank." (*Id*. at pp. 57-58.) In *Kreeft*, the court held that premium pay under the federal Fair Labor Standards Act (FLSA) was not "attached to the rank" the retirees held at retirement. The court explained that "although all firefighters of all ranks are *eligible* to receive FLSA premium pay, they do not receive such pay merely because they hold a particular rank." (*Id*. at p. 55.) To the contrary, "receipt of FLSA premium pay has nothing to do with 'rank,' and everything to do with a particular firefighter's schedule." (*Ibid*.)

Here, the requirement that an officer be assigned to the patrol division to receive MPO pay compels the conclusion that MPO pay is not attached to the officer's rank. To the contrary, MPO pay attaches to the officer's assignment.[4] The association's characterization of the patrol division as the "default" assignment for all police officers is largely misleading. "The Oakland Police Department is organized into three bureaus: Bureau of Field Operations (East and West), Bureau of Investigations, and Bureau of Services." The patrol division is located in the Bureau of Field Operations. Police officers are assigned to various divisions on an annual basis. The association is correct that police officers are assigned to the patrol division as their "principal organizational unit" or "home base." However, it is undisputed that not all eligible employees are assigned to the

---

[4] The record identifies other "premium assignment pay," including motorcycle and aerial patrol duty pay, under which employees who have completed the required training programs and who, thereafter, are assigned to duty as a motorcycle officer or to the helicopter unit receive "five percent (5.0%) in addition to his/her regular base rate of pay." Employees who are assigned as "evidence technicians" or certified as "field training officers" also receive an additional percentage as premium assignment pay. The parties agree that compensation within these "premium assignment pay" categories is not included in pension calculations. Contrary to the association's argument, "line-up pay," which was included in pension calculation, is not comparable to MPO pay. Although characterized as "premium pay," line-up pay was merely extra compensation for the organizational, pre-shift meeting that officers assigned to the traffic and patrol divisions were required to attend. (*City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 221.) This pay was included in compensation not because it was compensation attached to rank, but because it reflected the actual number of hours an officer worked.

5

patrol division; many are assigned to various other divisions such as homicide, training or recruiting. As explained by the police department's personnel manager, "Senior police officers typically compete for assignments outside of the patrol division, in 'specialty units,' and are not considered for patrol assignments during an annual draw for assignments until they have maxed out in their specialty assignments. Once they have reach the maximum time outside of patrol, . . . all sworn members by job class are considered for patrol assignments." As noted above, MPO pay was, at least in part, intended as an incentive to encourage senior officers to request assignment to the patrol division. Accordingly, employees of several ranks—officers, sergeants, lieutenants—may have worked a portion of their career in the patrol division; they would have earned MPO pay, if otherwise qualified, by virtue of that assignment, not their rank.

*3. The MOU that added MPO pay did not restructure the relevant ranks or create an additional step within an existing rank.*

In *Dunham v. City of Berkeley* (1970) 7 Cal.App.3d 508, 513, the court concluded Berkeley could not avoid its obligation to increase the pensions of its retired police officers by creating new "ranks" to disguise a general pay raise. Berkeley, like Oakland, had a fluctuating police retirement plan in which benefits were based on the " 'average salary attached to the respective rank or ranks held during the three years immediately preceding the date of retirement.' " (*Id*. at p. 511.) After the plaintiffs in that case retired, Berkeley established a new "senior patrolman" and "career incentive program" that increased the salaries of officers who met certain longevity and training requirements. (*Id*. at p. 512.) The retired plaintiffs contended they were entitled to the benefit of these new programs in calculating their retirement benefits. Berkeley responded that the senior patrolman and career incentive classifications were new ranks, created after the plaintiffs retired, and thus they were not the "rank or ranks" the retirees held before retiring. On appeal, the court found the new classifications did not create "new" ranks, but instead added salary classifications within each rank. (*Id*. at p. 515.) The court stated, "regardless of the nomenclature adopted by the city, the new classifications are not separate ranks, but restructuring of ranks." (*Ibid*.) Since almost all of the then-current police employees

6

participated in the new incentive programs, the court found the programs "may reasonably be termed a system of general pay raises." (*Ibid.*)

Here, MPO pay did not create a new rank or new steps within existing ranks. An active police officer received the additional pay when assigned to the patrol division and not if later assigned to a different division. As noted by appellants, it would be unfair for retired officers to "receive a general raise while active-duty officers only receive a temporary premium while assigned to patrol division."

The association points to the inconsistency between the appellants' current position and the retirement system board's prior inclusion of MPO pay in the pension calculations of a single retiree. However, no party suggests that the board is bound by the prior determination. It may well be that a mistake was made in the prior instance and that the particular retiree received a benefit to which he was not entitled. Such a mistake provides no justification for perpetuating the error.

Therefore, we conclude that the trial court erred in granting the association's petition for a writ of mandate.

## Disposition

The order granting the petition for a writ of mandate is reversed with directions to issue a new order denying the petition.


POLLAK, P. J.

WE CONCUR:

STREETER, J.
TUCHER, J.

7

Filed 3/20/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RETIRED OAKLAND POLICE OFFICERS ASSOCIATION et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> OAKLAND POLICE AND FIRE RETIREMENT SYSTEM et al., <br><br> Defendants and Appellants. | A148987 <br><br> (Alameda County <br> Super. Ct. No. RG-14753080) <br><br> ORDER CERTIFYING OPINION <br> FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on February 25, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


Date: _____ _____ P.J.

1

Trial court:        Alameda County Superior Court

Trial judge:        Honorable Frank Roesch

Counsel for defendants and appellants: BEST BEST & KRIEGER LLP
             Howard B. Golds
             Benjamin C. Lee

             BURKE, WILLIAMS & SORENSEN, LLP
             Kevin D. Siegel

Counsel for plaintiffs and respondents: McCRACKEN, STEMERMAN & HOLSBERRY, LLP
             W. David Holsberry
             Paul L. More
             Sarah Grossman-Swenson
             Kimberley C. Weber

A148987