[No. 25058-6-II. Division Two. November 9, 2000.]

GERALD CHANCELLOR, ET AL., *Respondents*, v. THE DEPARTMENT OF RETIREMENT SYSTEMS, *Appellant*.

*Christine O. Gregoire, Attorney General,* and *Anne E. Hall, Assistant,* for appellant.

*David L. Edwards* (of *Edwards & Hagen*), for respondents.

BRIDGEWATER, J. — The Department of Retirement Systems appeals a superior court order reversing an administrative order that determined that payments made in exchange for waiver of vacation leave were not part of the "basic salary" used to calculate pensions under the Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF) Plan I. We reverse the superior court's order and affirm the final order of the Department of Retirement Systems.

In August 1992, the City of Aberdeen (City) asked the Washington State Department of Retirement Systems (De-

partment) for clarification on reportable compensation under LEOFF Plans I and II. The City asked whether qualifying employees may "elect to exchange vacation leave for a cash equivalency on a monthly basis." Clerk's Papers at 127. Specifically, the question was whether salary paid to police and firefighters as a result of trading vacation leave for a cash equivalent was reportable compensation under LEOFF Plans I and II.

In October 1992, the Department responded, concluding that the payments made to City employees who elected to exchange vacation leave for a cash equivalency were not basic salary as defined under RCW 41.26.030(13)(a). Specifically, the Department asked the City to "not consider them [vacation leave payments] a part of basic salary which is reportable to the Department." Clerk's Papers at 129.

In December 1992, the City induced police captains Alan Marrs and Nels Sundstrom to leave their collective bargaining unit (the Aberdeen Police Association) and become part of the City's management staff. As inducement, the City represented that "their base salary would be increased if they waived their right to 8 hours vacation leave per month . . . ." Clerk's Papers at 111. The City adopted an ordinance effective January 1, 1993, which specifically provided:

> Police Chiefs and Fire Chiefs who . . . irrevocably in writing waive all rights up to 8 hours of vacation leave a month shall receive a like number of additional hours of pay as part of their base salary in exchange for the vacation leave waived.

Clerk's Papers at 108-09. The City adopted two other ordinances in 1993 that extended this same benefit to deputy police chiefs, assistant fire chiefs, and police captains.

On December 31, 1992, former Deputy Police Chief Gerald Chancellor, former Fire Chief Lowell Killen, and former Assistant Fire Chief Anthony Lupo each signed a waiver following these ordinances, irrevocably waiving their right to eight hours of vacation leave per month in

exchange for an additional eight hours of "base salary." Clerk's Papers at 111, 112. On May 13, 1993, former police captains Marrs and Sundstrom also signed vacation leave waivers.

Each of these City employees (collectively Respondents) retired between 1 and 27 months after waiving their right to eight hours of vacation leave per month. Sundstrom retired from the City effective June 15, 1993 (1 month). Marrs retired from the City effective March 31, 1994 (10 months), Lupo in July 1994 (19 months), Killen in January 1995 (25 months), and Chancellor in March 1995 (27 months). Following the City's ordinances, their basic salaries reported to the Department included the monthly vacation conversion pay. Respondents were all members of LEOFF Plan I. The effect of increasing the "basic salary" by including the monthly vacation conversion pay was to increase their pensions because the individual's pension is calculated upon their "basic salary."[1]

The Department conducted a routine audit of the City in November and December 1995. During the audit, the Department first learned that the City had included the vacation conversion payments made pursuant to the ordinances in its calculations of Respondents' base pay. As a result, the Department informed Respondents that their retirement benefits had been overstated by including these amounts.

In 1996, the Respondents contested the Department's decision to exclude the vacation leave payments from their pension calculations. The Department's LEOFF administrator determined that "the payments made in lieu of

---

[1] The service retirement allowance of a LEOFF Plan I member who has over 20 years of service is calculated as "one twelfth of two percent of his or her final average salary." RCW 41.26.100. Therefore, although the additional monthly salary increase for each person was relatively small, between $200 and $250 per month, the retirement benefit could be substantial. For example, if Captain Sundstrom, who had over 20 years of service, survived for 20 years, his monthly pension increase would be $109.29 and result in an additional benefit of $26,229 just because of his one month vacation waiver. Assuming that each Respondent lives for 20 years after retirement, the total additional benefits calculated upon the additional payments made in lieu of vacation leave would total about $162,290.

vacation leave were a form of special salary or wages, and therefore not basic salary which could be included in the pension calculation." Clerk's Papers at 114. The Department's Petition Examiner reached the same legal conclusion. After an administrative appeal, the Director issued a final order affirming this decision.

Respondents next appealed the Director's decision to Grays Harbor County Superior Court. The superior court issued a memorandum opinion reasoning that "the Appellants agreed to work for twelve more days a year and there is no reason why the money they were paid for those days should not be included in their base salary." 2 Clerk's Papers at 273. The superior court concluded that the Department erroneously interpreted the definition of "basic salary" under RCW 41.26.030(13)(a) and reversed the Final Order as it related to the payments in lieu of vacation time.

I. Standard of Review

Under the Washington State Administrative Procedure Act (APA),[2] an aggrieved party may seek judicial review of an administrative decision by filing a petition in superior court. Once the superior court has issued a final decision, the aggrieved party may seek review in the Court of Appeals. RCW 34.05.526. A reviewing court shall grant relief from an agency order in an adjudicative proceeding if it determines that the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d).

■ ■ We apply the APA standard of review directly to the agency decision, not to that of the superior court. *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323–24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). The Respondents bear the burden of demonstrating that the Department erroneously interpreted or applied the law. *Grabicki v. Dep't of Ret. Sys.*, 81 Wn. App. 745, 750, 916 P.2d 452 (citing RCW 34.05.570(1)(a) and RCW 34.05.570(3)), *review denied*, 130 Wn.2d 1010 (1996). We review issues of law under the error of law standard.

[2] Ch. 34.05 RCW.

*Grabicki*, 81 Wn. App. at 750 (citing *Henson v. Employment Sec. Dep't*, 113 Wn.2d 374, 377, 779 P.2d 715 (1989)). Under this standard, while this court must grant substantial weight to the agency's view of the law, we may essentially substitute our own judgment for that of the administrative agency. *Franklin County*, 97 Wn.2d at 325.

II. Special Salary or Wages

Retiring LEOFF Plan I members are entitled to a pension based on the "basic salary" the individual received at the time of retirement. RCW 41.26.030(13)(a) defines basic salary as the

> basic monthly rate of salary or wages, including longevity pay *but not including overtime earnings or special salary or wages*, upon which pension or retirement benefits will be computed.

(Emphasis added.) The parties dispute whether the pay they received in lieu of eight hours vacation leave is "special salary or wages" excluded from the calculation of a retiree's base salary.

■■■ We interpret statutes to give effect to the Legislature's intent. *Cherry v. Municipality of Metro. Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). And we liberally construe pension legislation to favor beneficiaries. *Grabicki*, 81 Wn. App. at 750 (citing *Hanson v. City of Seattle*, 80 Wn.2d 242, 493 P.2d 775 (1972)). If a statute is unambiguous, its meaning may be derived from the language of the statute alone. *Cherry*, 116 Wn.2d at 799. But if the legislative intent is not clear from the language alone, we will attempt to determine such intent and may resort to various tools of statutory construction, including legislative history and administrative interpretation. *Grabicki*, 81 Wn. App. at 750. Moreover, the adopted interpretation should always be that which best advances the legislative purpose of the statute. *Grabicki*, 81 Wn. App. at 750 (citing *Cherry*, 116 Wn.2d at 799; *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)).

■■ In *Grabicki*, Division One of this court examined whether education pay, undefined under chapter 41.26

RCW, was "basic" or "special pay." The court looked to the following dictionary definitions:

"Basic" is defined in the dictionary as "(1) Of, pertaining to, or forming a base; fundamental, essential . . . (2) Constituting a minimum. . . ." NEW SHORTER OXFORD ENGLISH DICTIONARY 188 (1993). "Special" is defined as "(1) Exceptional in quality or degree; unusual: out of the ordinary . . . (3) Distinguished from others of the kind by a particular quality or feature . . . (b) Additional to the usual; extra . . . (5) Having an individual or limited application or purpose; affecting or concerning a single person, thing or set. . . ." NEW SHORTER OXFORD ENGLISH DICTIONARY 2971 (1993).

*Grabicki*, 81 Wn. App. at 751. The court concluded that education pay is special, rather than basic, because it was not "fundamental" or "essential," did not "constitute a minimum" of the employees' salaries at issue, was distinguished from other types of pay, and was payable to a single set of persons. *Grabicki*, 81 Wn. App. at 751.

Here, the statute is also ambiguous as to whether pay in lieu of vacation time is "basic" or "special" salary. Consequently, this court gives "basic" and "special" their ordinary meanings. *Grabicki*, 81 Wn. App. at 751 (citing *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990)). Furthermore, when an agency is charged with administration and enforcement of a statute and the statute is ambiguous, this court must accord substantial weight to the agency's interpretation. *See Inland Empire Distribution Sys. v. Utils. & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624 (1989). Here, the Department is charged with administration of retirement plans, and the statute is technical and falls within the agency's area of expertise. Consequently, we afford the agency's interpretation of "special salary" substantial weight.

■■ In *Grabicki*, the court noted that the Department has long interpreted "basic salary" to be salary "attached to position or rank," meaning payments received for duties performed, not compensation for other personal characteristics and achievements. *Grabicki*, 81 Wn. App. at 755.

Respondents interpret this to mean that "special salary" is any payment made to a public employee "based on attributes" of that employee. They argue that the payments in this case resulted from an employee's choice between two different compensation packages, not a personal attribute. And Respondents object to terming the payments made in lieu of vacation hours as anything but basic salary, relying upon the language used in the waivers. They argue that the City increased their basic salaries by an amount equivalent to 12 days' pay when the City restructured their salaries according to the City ordinances. Therefore, Respondents argue that the vacation payments "became" part of Respondents' basic salaries by virtue of the negotiations.

But the "additional" pay was not structured as a base pay increase for those positions; it was an elective, individual option to convert vacation hours to pay. The State argues that the personal choice involved in determining whether to receive this vacation conversion payment makes such a payment unique to the individual and therefore is not "attached to position or rank." We agree. Each Respondent's right to receive vacation conversion pay depended entirely on his individual decision with regard to waiver, not upon his rank or position, and not upon his performance of duty. Consequently, such payment was "additional to the usual" salary and not "essential" to the position. Although every employee of that same position or rank was eligible to receive the conversion pay, it was not an automatic payment made to every employee of that rank. The vacation conversion payment would not be made to the next person to hold that position unless he or she also elected this option and executed the same waiver.

Furthermore, the City offered the vacation conversion payments to the Respondents as incentive to work the eight hours instead of taking the vacation time, but it was not a requirement of the position to work these extra hours. Similarly, in *Grabicki*, the education pay offered an incentive to employees to seek further education, but was not a requirement of the position. *Grabicki*, 81 Wn. App. at 751.

Consequently, the enhanced compensation in this case is not dependent upon the attributes of the position, and it is therefore not "basic" salary. *Grabicki*, 81 Wn. App. at 754.

The payments in lieu of vacation time can be understood by an analogy to overtime earnings. Overtime earnings are specifically excluded from "basic salary" under the statute. RCW 41.26.030(13)(a). Employees receive their basic salary whether or not they work overtime hours. Similarly, employees receive their base salary whether or not they work the eight hours of vacation time. A payment in exchange for vacation time results in a basic wage plus an *additional* amount of pay over the basic salary for hours not normally worked. Overtime pay also results in additional pay over the basic salary for hours not normally worked.

██ Furthermore, in general, a "cash-out" of unused vacation leave paid at the time of an employee's retirement is a form of "special salary or wages" that may not be included in the LEOFF Plan I pension calculation. 1976 Op. Att'y Gen. No. 1, 6–7. "Although not controlling, Attorney General opinions are given considerable weight." *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 63, 847 P.2d 440 (1993) (citation omitted). Here, instead of either using vacation time or accruing it and receiving a lump sum cash-out payment at retirement, in effect, the Respondents received the "vacation" payments with their monthly pay. Either a final lump sum payment or a monthly payment is still payment for unused vacation leave; when the employee received the vacation conversion payment does not affect whether it is "special wages."

Therefore, Respondents have not demonstrated that the Department erroneously interpreted or applied the law. We hold that the Department correctly determined that vacation conversion payments are "special salary or wages" and as such not part of "basic salary" for calculating pension benefits.

III. Effect of the City's Ordinances

██ ██ The City's intent in adopting the three ordi-

nances may have been to clarify that it considered vacation conversion pay part of basic salary. But "the parties to a contract may not decide for themselves the meaning of terms used by the Legislature." *Grabicki*, 81 Wn. App. at 752. And the City does not have the authority to adopt its own definition of a statutory term by ordinance. In order to be valid, an ordinance must conform to general statutes. *Employco Pers. Servs., Inc. v. City of Seattle*, 117 Wn.2d 606, 617, 817 P.2d 1373 (1991). In case of a conflict, the ordinance is void. *Employco*, 117 Wn.2d at 617. Therefore, the City's ordinances defining vacation conversion pay as part of "basic salary" are legally void.

We reverse the judgment of superior court as it related to the payments in lieu of vacation leave and affirm the Department's final order dated April 30, 1998.

MORGAN and WANG, JJ., concur.