[No. 20245-3-III. Division Three. August 6, 2002.]

L. VERNON BATES, ET AL., *Appellants*, v. THE CITY OF
RICHLAND, *Respondent*.

*Daryl D. Jonson* (of *Cowan, Walker, Jonson & Moore*), for appellants.

*David A. Elofson* (of *Menke, Jackson, Beyer, Elofson & Ehlis*), for respondent.

KURTZ, J. — Each of the appellants (Pensioners) retired from the Richland Police Department at the highest step for his respective position and participates in LEOFF (Washington Law Enforcement Officers' and Fire Fighters' Retirement System) 1 pursuant to RCW 41.26.040(2). The Pensioners' pension benefits are calculated under RCW 41-.20.050 or .060, which provides that each pensioner is entitled to a pension of "fifty percent of the amount of salary at any time hereafter attached to the position" held by the retired member for the year preceding the date of his retirement. Until 1999, the Pensioners' pensions were calculated using Richland's step and grade salary structure

that provided for advancement through steps within a given rank based on longevity and satisfactory performance of service. In 1999, Richland implemented a performance-based system, and began calculating the Pensioners' pensions based on 50 percent of the midpoint of the salary range for each position rather than 50 percent of the highest step for each position.

The Pensioners filed this declaratory judgment action seeking a determination of their rights under the applicable statutes, and damages for breach of contract and breach of promise. The court granted summary judgment in favor of Richland. On appeal, the Pensioners contend: (1) the decision to calculate their pensions based on the midpoint of the new salary range impairs an existing contractual obligation in violation of article I, section 23 of the Washington Constitution; (2) Richland is obligated by statute, contract, and administrative practice to calculate their pensions based on the highest step for each position; (3) promissory estoppel prevents Richland from changing the method for calculating their pensions; and (4) the court erred by considering hearsay evidence when deciding the motion for summary judgment. Additionally, the Pensioners seek prejudgment interest or, alternatively, double damages for willful nonpayment of wages under RCW 49.52.070, and attorney fees under RCW 49.48.030 and RCW 49.52.070.

We conclude that Richland's performance-based salary system does not maintain parity between the pensions of the Pensioners and the salaries of their currently-employed counterparts. For that reason, calculating the Pensioners' pensions based on the midpoint of the performance-based salary system violates the Pensioners' rights under RCW 41.20.050 and .060. We hold that the Pensioners are entitled to have their pensions calculated based on the salary for the highest step for their positions under Richland's performance-based system. We deny the Pensioners' request for prejudgment interest and conclude that an award of double damages or attorney fees under RCW 49.52.070 is not warranted. However, we grant the Pensioners' request

for attorney fees under RCW 49.48.030 and award fees at the trial level and on appeal. We reverse and remand for the entry of a judgment in favor of the Pensioners. On remand, the superior court shall determine the amount of the Pensioners' attorney fees.

## FACTS

The Pensioners were each hired by the City of Richland as police officers before March 1, 1970, and later retired with varying periods of service. In 1959, Richland established the Richland Police Relief and Pension Plan (Richland Plan) for its officers pursuant to chapter 41.20 RCW. All of the Pensioners are retired participants in the Richland Plan. Each Pensioner retired at the highest step available for his position.

In 1969, the legislature combined all municipal police and fire fighter pension plans into a single statewide system. The legislature created the Washington Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF 1), which became effective on March 1, 1970. RCW 41.26.040(2). As police officers employed by Richland, all of the Pensioners became participants in LEOFF 1 because their participation was mandated by RCW 41.26.040(2). LEOFF 1 is administered by the Department of Retirement Systems (DRS).

The LEOFF 1 legislation did not terminate the Richland Plan. Under RCW 41.26.040(2), the Pensioners' service continued to be credited under the Richland Plan and LEOFF 1 as benefits under both plans are coordinated. Specifically, RCW 41.26.040(2) provides that for purposes of computation of retirement benefits, pensioner's "creditability of service and eligibility for service or disability retirement and survivor and all other benefits shall continue to be as provided in such prior retirement act, as if transfer of membership had not occurred."

The Pensioners' pension benefits are those specified in RCW 41.20.050 or .060, which provide that each pensioner

is entitled to a pension—based on service or disability—of "fifty percent of the amount of *salary* at any time hereafter *attached to the position*" held by the retired member for the year preceding the date of his retirement. (Emphasis added.) An additional two percent of the salary attached to the position at retirement must be paid to pensioners for each year of service over 25. RCW 41.20.050, .060.

When each Pensioner retired, his pension under LEOFF 1 was calculated and paid by the DRS. If the LEOFF 1 pension was less than the pension specified in RCW 41.20.050 or .060, the difference was to be paid by Richland under the Richland Plan. RCW 41.26.040(2). Hence, the combined pension payments must equal the amount specified in RCW 41.20.050 or .060.

Until 1999, Richland maintained a step and grade salary structure for managers in its police department. This salary structure provided for steps or increments in the salary for each rank. Advancement from one step to another within the same rank was based upon longevity of service and satisfactory performance of duties. At the time of his retirement, each Pensioner had advanced to and was being paid at the highest salary step for his position.

The Pensioners contend—and Richland denies—that as each Pensioner retired, Richland promised each Pensioner that they would receive a pension equal to 50 percent of the salary for the highest step attached to the position from which they retired. Nevertheless, the parties agree that after each Pensioner retired, Richland paid each Pensioner a pension based on 50 percent of the salary payable to the highest step attached to the position from which he retired. This practice continued from 1959 until 1998.

In December 1998, pursuant to Resolution 92-98, Richland adopted a new performance-based pay and classification plan. Richland contends that each level of the step and grade system was based on a market rate for that step and grade. Richland points out that under the step and grade system, there was no method available for providing incentive or bonus payments to current employees.

Richland maintains that the new pay system replaces the step and grade system with a unique performance-based system that uses the market rate to establish the midpoint of the salary schedule. In Richland's view, the ability to receive and retain payments over the salary midpoint is earned by exemplary—as opposed to satisfactory—performance.

After the adoption of the performance-based system, Richland began paying the Pensioners 50 percent of the midpoint of the salary range for the position from which each had retired, rather than the highest step as had been the practice since 1959. Hence, on January 1, 1999, Richland's Pension Board calculated the pensions due the Pensioners at 2.8 percent above the pensions paid in 1998, rather than at 50 percent of the highest step in the 1999 pay schedule. For the calendar year 2000, Richland increased the salary structure for active employees by 4 percent and also increased Pensioners' pensions by 4 percent over the 1999 level. Effective January 1, 2001, Richland increased the salaries for all active police officers by 3.2 percent of the 2000 wage scale and provided a comparable increase in the Pensioners' pensions. Although dissatisfied with the method of calculation, each Pensioner has received an increase in his retirement income. If the Pensioners' position is accepted, the cost to Richland is estimated to consist of a lump sum payment of $46,007.58, and annual costs of at least $20,000.

The Pensioners filed this action seeking a declaratory judgment under chapter 7.24 RCW. After considering both the Pensioners' and Richland's motions for summary judgment, the superior court granted Richland's motion. The Pensioners appeal.

*Standard of Review.* When reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. *Kahn v. Salerno*, 90 Wn. App. 110, 117, 951 P.2d 321 (1998). Once the moving party has established that there is

no dispute as to any issue of material fact, the burden shifts to the nonmoving party to establish the existence of an element material to its case. *Id.* Bare assertions that a genuine material issue exists will not defeat a summary judgment motion in the absence of actual evidence. *White v. State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997).

## ANALYSIS

■ ■ In Washington, pension rights are contractual rights that vest at the beginning of the employment relationship. *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 700, 296 P.2d 536 (1956). Pension rights vesting from the inception of employment become property rights and may not be divested unless the changes are equitable to the employee or are necessary to maintain the flexibility and integrity of the pension system. *Eagan v. Spellman*, 90 Wn.2d 248, 256, 581 P.2d 1038 (1978) (citing *Bakenhus*, 48 Wn.2d at 701). Article I, section 23 of the Washington Constitution and article I, section 10 of the United States Constitution prohibit any form of legislative action impairing existing obligations. *Wash. Fed'n of State Employees v. State*, 127 Wn.2d 544, 560, 901 P.2d 1028 (1995). The prohibition against any impairment of contract is not absolute and the court uses a three-part test to determine if there has been an impairment of public contract: (1) is there a contractual relationship; (2) does the legislative action substantially impair the contractual relationship; and (3) if there is substantial impairment, is it reasonable and necessary to serve a legislative purpose. *Id.* at 561 (citing *Tyrpak v. Daniels*, 124 Wn.2d 146, 151-52, 874 P.2d 1374 (1994)).

■ *Article I, Section 23 Analysis.* The Pensioners first contend that Resolution 92-98 impairs a vested contract right of the Pensioners in violation of article I, section 23 of the Washington Constitution. Significantly, the Pensioners concede the vested right at issue is a contractual right to a pension in the amount specified in RCW 41.20.050 or .060. Moreover, the Pensioners provide no evidence regarding

any additional promise made at the time of hire or at any other time prior to retirement. Hence, the question here must be resolved in reference to the statutory requirements and there is no impairment of a vested contractual right unless the statutory requirements are not met. In short, the issue here is whether the statutory provisions permit pensions paid to officers retiring under the step and grade system to be calculated using levels established as part of the new performance-based system.

*Administrative Practice.* The Pensioners next contend that Richland has established a long-standing practice of calculating their pensions based on the highest salary step for each position and that this administrative practice has ripened into an enforceable contract right. To support this argument, the Pensioners rely on cases such as *Washington Federation of State Employees v. State*, 98 Wn.2d 677, 658 P.2d 634 (1983), *Washington Association of County Officials v. Washington Public Employees' Retirement System Board*, 89 Wn.2d 729, 575 P.2d 230 (1978), and *Eagan*, 90 Wn.2d 248. Simply stated, the Pensioners attempt to establish an administrative practice of calculating pension benefits based on the highest level for each position.

■ But this "administrative practice" is not the right the Pensioners seek to enforce. The parties agree that the Pensioners have a vested right to receive a pension in the amount specified in RCW 41.20.050 and .060. Consequently, each Pensioner is entitled to receive a pension based on "fifty percent of the amount of salary at any time hereafter attached to the position held by the retired member for the year preceding the date of his retirement." RCW 41.20.050. Each Pensioner retired at the highest step available for his position and received a pension calculated at the highest level because that was what was required under the statute. We conclude that the question here should be resolved by reference to the terms of the statute rather than by reference to evidence demonstrating an administrative practice of paying pensions as required by statute.

*Promissory Estoppel.* In a similar vein, the Pensioners argue that based on the doctrine of promissory estoppel, Richland is estopped from altering the basis for calculating their pensions. Each of the Pensioners submitted an affidavit stating that at the time he retired, he was being paid at the top of the salary grade for his position. Each affiant states that when he retired, he relied upon Richland's representation that his pension would be 50 percent of the highest salary step for his respective position. Again, the promissory estoppel framework is inapplicable because the Pensioners provide no evidence demonstrating that any promise was made other than a promise to pay the pension benefits specified in chapter 41.20 RCW. Hence, Richland's decision to recalculate the pensions must be evaluated in reference to the statutory requirements, not the contents of a promise.

*RCW 41.20.050 and RCW 41.20.060.* The Pensioners seek to enforce the pension rights specified in RCW 41.20.050 and .060. These statutes provide a fluctuating pension that may change in order to maintain a proportionate relationship to current salary levels. *See Anderson v. City of Seattle,* 78 Wn.2d 201, 202, 471 P.2d 87 (1970). Consequently, to prevail, Richland must demonstrate that its decision to calculate the Pensioners' benefits by using the midpoint of the performance-based system compensates the Pensioners for the "salary" attached to the "position" that they held under the step and grade system. We conduct this inquiry keeping in mind that public pension legislation is liberally construed in favor of beneficiaries. *Hanson v. City of Seattle,* 80 Wn.2d 242, 247, 493 P.2d 775 (1972).

RCW 41.20.050 and .060 suggest a two-step inquiry. First, a determination must be made, if possible, as to what current position is comparable to the position held by each Pensioner at retirement. Second, an inquiry must be made to determine what elements of the salary attached to that position must be included when calculating the pension benefits. RCW 41.20.005(2) defines "position" as "the particular employment held at any particular time, which may

or may not be the same as civil service rank." RCW 41.20.005(4) defines "salary" as the basic monthly rate of salary or wages, including longevity pay, but "not including overtime earnings or special salary or wages."

Under the step and grade system, the salary system provided for steps or increments in the salary for each rank. Advancement from one step to a higher step was based on longevity and satisfactory performance of duties. Consequently, each Pensioners' "position" is described in terms of the rank and step attained at the time of retirement. The problem here is that Richland has adopted a "new and unique" pay system that purportedly allows the employer to reward exceptional performance with bonus or incentive pay. Clerk's Papers (CP) at 40.

Richland takes the position that the midpoint of the new salary scale for each rank is determined by the same factors considered under the step and grade system and that any payment above the midpoint represents bonus pay. According to Richland, bonus pay constitutes "special salary or wages" under RCW 41.20.005(4) and must be excluded when pensions are calculated under RCW 41.20.050 and .060. In short, Richland uses the limitations in the statutory definition of "salary" to foreclose any inquiry into a comparison of the "positions" under the two systems.

Where Richland frames its argument around the limitations contained in the definition of "salary," the Pensioners center their argument on the fact that each retired from the highest step for his respective "position." According to the Pensioners, their pensions must always be calculated based on the highest step for the rank they attained, regardless of any underlying structural changes to the salary schedule. In effect, the Pensioners suggest that any structural changes to the underlying salary schedule will not affect their pensions even though both RCW 41.20.050 and .060 provide for a pension based on the "salary at any time hereafter attached to the position" held by each Pensioner at retirement.

*Case Law.* Both the Pensioners and Richland find support for their respective positions in the existing case law. *Grabicki v. Department of Retirement Systems*, 81 Wn. App. 745, 916 P.2d 452 (1996), relied upon by Richland, discusses the definitions of "position" and "salary." In *Grabicki*, LEOFF 1 pensioners sought to have compensation for post-high school education included in retirement benefits calculated under RCW 41.26.100. The applicable provision—like RCW 41.20.050 and .060—calculated the pensioners' benefits based on the "final average salary" using the "basic salary attached to such same position or rank at time of retirement." RCW 41.26.030(12)(a)(i); *Grabicki*, 81 Wn. App. at 749 n.3. In *Grabicki*, the amount of the employee's "final average salary" was calculated from "basic salary" under RCW 41.26.030(12). The definition of "basic salary" under this provision—like the definition of "salary" under RCW 41.20.005(4)—defined "basic salary" as "the basic monthly rate of salary or wages, including longevity pay but not including overtime earnings or special salary or wages." RCW 41.26.030(13)(a).

Mr. Grabicki argued that the term "position" should be defined by the collective bargaining agreement with the city. He maintained that when he retired he was a member of paygroup "PO5E" which designated an officer with five years of service holding a B.A. degree. *Grabicki*, 81 Wn. App. at 752. The court rejected this argument and applied the definition under RCW 41.26.030(21), which defined "position" as "the employment held at any particular time, which may or may not be the same as civil service rank." *Grabicki*, 81 Wn. App. at 752. The court concluded that the work for which Mr. Grabicki was paid was the performance of his duties as a police officer. This position did not require the education he had achieved and for which education incentive pay had been received. *Id*.

The *Grabicki* court went on to discuss the term "basic salary" and concluded that "[i]f performance of the duties of the position calls for special training or risk for which extra compensation is paid, the compensation is basic salary.

Otherwise, compensation for special training is special salary." *Id.* at 753. The court also concluded that there was no logical distinction between longevity pay and education pay, and that longevity pay would be special salary but for the legislative policy recognizing and rewarding long service. *Id.* at 754-55. The court reasoned that longevity pay and education pay each represented "compensation for individual achievement beyond that required for performance of the duties of the position." *Id.* at 754.

In *Chancellor v. Department of Retirement Systems*, 103 Wn. App. 336, 12 P.3d 164 (2000), the *Grabicki* reasoning was applied to resolve the question as to whether payments made in exchange for a waiver of vacation leave constituted "basic salary" for purposes of calculating LEOFF 1 pensions. *Chancellor*, 103 Wn. App. at 338. Division Two of this Court concluded that the additional pay was an elective individual option to convert vacation time and the right to receive this pay was unique to the individual and not attached to position or rank. *Id.* at 344. Significantly, the court determined that the additional pay was not part of "basic salary" because it was not dependent on the attributes of the position. *Id.* at 345.

Applying the statutory language in light of the analysis in *Grabicki* and *Chancellor*, the rule is that "salary" includes longevity pay and pay for the performance of duties attributed to the pensioner's position. However, contrary to Richland's assertions, the limitations contained in the statutory definition of "salary" do not resolve all questions related to the issue of "position." The *Grabicki* court applied a two-step approach, first making a determination as to "position" and then inquiring as to what portion of the position's salary should be included when calculating pension benefits. The *Chancellor* court limited its inquiry to a determination as to "basic salary" because there was no question as to which position was comparable to the one held by the retiree. In contrast to *Grabicki* and *Chancellor*, here the fundamental question is whether the "positions" can be compared. For guidance on this issue we turn not to

the case law, but to an Attorney General Opinion relied upon by the Pensioners.

 *Attorney General Opinion.* The Pensioners rely on a 1992 Attorney General Opinion to support a narrow construction of the word "position." Although not controlling, Attorney General opinions are given "considerable weight." *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wn.2d 819, 828, 748 P.2d 1112 (1988). In its opinion, the Attorney General answered the following question:

> If a city creates a new step in its civil service classification of police officers and advances all officers at the next lower step to that new step, are officers who retired at the next lower step entitled to have their pensions under chapter 41.20 RCW based on the salary attached to the new step?

1992 Op. Att'y Gen. No. 24, at 1 (1992). The classification changes described in this question are less disruptive than the structural changes made as part of the Richland Plan because the new step increase was merely tacked onto the salary classification system already in place. However, there is guidance in the three cases relied upon by the Attorney General. They are: *Dunham v. City of Berkeley*, 7 Cal. App. 3d 508, 86 Cal. Rptr. 569 (1970); *Baldwin v. City of San Diego*, 195 Cal. App. 2d 236, 15 Cal. Rptr. 576 (1961); and *City of Long Beach v. Allen*, 143 Cal. App. 2d 35, 300 P.2d 356 (1956).

 *Allen* is particularly helpful because it presents a factual situation that is similar to our case. In *Allen*, retired police officers sought to have their pensions increased based on increases given to active officers. Under the salary system in effect when the plaintiffs were working, each rank was divided into two pay grades based on longevity. *Allen*, 300 P.2d at 357. After the plaintiffs retired, the City of Long Beach established a new system that added three new rates of pay, making a total of five. Officers advanced through the first three steps based solely on longevity, but the last two increases were based on merit and were payable upon the recommendation of management. *Id*. At the time the new rates were established, the city specified

that the new salaries of active employees would be the same as or higher than the employee's previous salaries, and all active employees were assigned to the appropriate pay rate to ensure this result.

The plaintiffs, who retired at the highest rate of pay, claimed that their pensions should be based on the salary of the current employee who held the same position they held prior to retirement, rather than the rate of pay that would apply based on the transition formula used for active employees. 300 P.2d at 358. The court concluded that because of the plaintiffs' right to a fluctuating pension, the current counterparts of these retirees were the officers receiving the highest rate of pay under the new five-step system. The court permitted the pensions to be based on salary levels determined by a merit rating system because the new ordinance operated to the retirees' detriment and violated vested contractual pension rights. *Id.* at 359.

Based on *Allen* and the other cases, the Attorney General concluded:

> The principle that emerges from these case is that retirees' fluctuating pensions should reflect structural changes made in the salary schedule after retirement if the retirees would have benefitted from the change had they continued working. In other words, if the retirees' conduct while working establishes that they would have qualified for the new step, higher rate of pay, or additional compensation associated with the structural schedule change if still employed, then their pensions should be based on the higher compensation.

Op. Att'y Gen., *supra*, at 5.

We agree, but we also note that the Attorney General's conclusions rest on the assumption that the positions are defined such that a comparison is possible. The Pensioners here are entitled to receive a fluctuating pension based on the "salary at any time hereafter attached to the position held by the retired member for the year preceding the date of his retirement." *See* RCW 41.20.050, .060. Additionally, under Washington law, the definition of "salary" contains limitations that are applicable when calculating pensions.

Keeping these limitations in mind, we must examine Richland's performance-based system to determine (1) whether the new system is defined such that the current counterpart for each Pensioner's position can be determined and, if so, (2) which portions of that position's salary may be included in the calculation of the Pensioners' pension.

*Richland's Performance-Based Plan.* Richland contends that the salary associated with the midpoint of a position under the performance-based system constitutes the "salary" for the position for purposes of the calculation of pensions under RCW 41.20.050 and .060. To support this argument, Richland submitted the affidavit of Roger Lenk, Richland's Human Resources Director. According to Mr. Lenk, the salary levels established under the step and grade system were calculated and adjusted based on market averages for similar municipalities with similar classifications. Mr. Lenk asserts that under the performance-based system, the market rate is used to establish the midpoint of the salary range for a particular position and any salaries awarded above the midpoint represent "special salary or wages." CP at 40. Attached to Mr. Lenk's affidavit is a document entitled "Performance Appraisal System Guidelines and Procedures" (PAS), which explains the performance-based system in more detail. CP at 45.

An examination of the PAS Guidelines reveals several problems. First, as suggested by Mr. Lenk, the PAS Guidelines do provide that:

> Employees shall only receive salary increases based on competent performance up to the mid-point of the salary range. Advancement beyond the salary grade mid-point shall be based solely on performance that exceeds proficient performance levels for incumbents in the class. Employees who perform at less than proficient levels shall not receive any increase for that period.

CP at 73. But, the PAS Guidelines also provide:

- An employee receiving a performance evaluation rating of "Exceeds Requirements" for a single year would receive their increase *in the form of a one-time-only bonus*.

- An employee who receives a performance evaluation rating of "Exceeds Requirements" for a second consecutive year would receive their increase *in the form of an increase to base pay*.

- An employee receiving a performance evaluation rating of "Exceeds Requirements" for a third consecutive year would receive their increase *in the form of a one-time-only bonus*.

- An employee who receives a performance evaluation rating of "Exceeds Requirements" for a fourth consecutive year would receive their increase *in the form of an increase to base pay*.

- Should an employee who is paid at [a] level above the mid-point of their established salary range fail to receive an "Exceeds Requirements" rating in any year, the employee would receive no bonus or increase in their base pay. Should their performance not "Meet Requirements" for the position based on their experience and placement within the salary range, the employee's salary *could be reduced* to an appropriate level.

- Employees who are paid at [a] level below the mid-point of their established salary range could be advanced more rapidly towards the salary range mid-point should their performance be rated as "Exceeds Requirements."

CP at 73 (emphasis added).

This process operates in a different way than the theoretical framework described in Mr. Lenk's affidavit and salary paid over the midpoint level is not based solely on exemplary performance. The one-time-only bonuses are awarded based solely on exemplary performance, but the salary increases in the second and fourth year are based on a combination of performance and longevity. Payments for longevity are part of "salary" as defined in RCW 41.20.005(4) and must be included in pension calculations. Moreover, the fact that there is no set procedure for reducing salary levels attained above the midpoint is a

further indication that longevity is a factor in attaining and maintaining this level of pay.

A second problem with the PAS Guidelines is that there are no standards for awarding the "Exceeds Requirements" rating. Each Pensioner has a vested right to receive a pension based at 50 percent of the salary attached to the position he held at retirement. Simply stated, Richland does not demonstrate that its decision to calculate the Pensioners' benefits by using the midpoint of the performance-based system compensates the Pensioners for the "salary" attached to the "position" that they held under the step and grade system. Inherent in a fluctuating pension is the idea that positions can be compared. Here, Richland has adopted a poorly defined system making it impossible to determine whether the Pensioners' conduct while working would qualify them for the "merit" raises under the new job classification system. While Richland may adopt a new job classification system, it cannot use the adoption of a poorly defined system as a "back door" way of reducing pensions. Legislative changes that impair or adversely affect vested pensions impair contractual rights. *See Wash. Fed'n of State Employees*, 98 Wn.2d at 686-87. By adopting a poorly defined job classification, Richland has detrimentally impacted the Pensioners' vested rights to a fluctuating pension.

*Decision.* We conclude that Resolution 92-98 operates to the Pensioners' detriment and violates their rights under RCW 41.20.050 and .060. For that reason, the Pensioners are entitled to have their pensions calculated at the highest step for their position under the performance-based system.

*Prejudgment Interest, Double Damages or Attorney Fees.* The Pensioners contend that if they are successful on appeal, they are entitled to prejudgment interest or, alternatively, double damages and attorney fees.

*Prejudgment Interest.* The Pensioners contend that they are entitled to prejudgment interest because Washington law has historically treated prejudgment interest as a matter of right when a claim is liquidated. Relying on

*Bowles v. Department of Retirement Systems*, 121 Wn.2d 52, 78, 847 P.2d 440 (1993), Richland maintains that pension payments are not subject to interest. Significantly, RCW 39.76.020(7) provides interest on unpaid public contracts is not allowed on payments from any retirement system listed in RCW 41.50.030 and chapter 41.24 RCW.

The Pensioners concede that RCW 39.76.020(7) exempts retirement systems listed in RCW 41.50.030 from paying interest. But the Pensioners assert that RCW 41.50.030 lists only those retirement systems whose retirement duties were transferred to the Department of Retirement Systems in 1976. The Pensioners contend that municipal plans are not listed under this section and RCW 39.76.020(7) does not apply to the Richland Plan.

RCW 39.76.020(7) exempts retirement systems listed in RCW 41.50.030 from paying interest. The Washington Law Enforcement Officers' and Fire Fighters' Retirement System is listed under RCW 41.50.030(1)(c). While the Richland Plan exists for purposes of calculating pensions, RCW 41.26.040 provides that the Pensioners' membership was transferred to the LEOFF system. Because the pensions here are part of the LEOFF system, they are exempt from interest payments.

*Double Damages and Attorney Fees under RCW 49.52.070.* The Pensioners seek double damages under RCW 49.52.070 as an alternative to prejudgment interest.

RCW 49.52.070 is the enforcement provision of RCW 49.52.050(2), which provides that any employer who "[*w*]*illfully* and *with intent* to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract . . . [s]hall be guilty of a misdemeanor." (Emphasis added.) RCW 49.52.070 provides that any employer who violates RCW 49.52.050 shall be liable in a civil action by the aggrieved employee for twice the wages unlawfully withheld by way of exemplary damages, together with costs of suit and reasonable attorney fees.

■ Generally, the issue of whether an employer has acted willfully for purposes of RCW 49.52.070 is a question of fact. *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 160, 961 P.2d 371 (1998). However, even if we assume that this statute is applicable here, the existence of a bona fide dispute is sufficient to preclude a finding of willfulness. *Id.* at 161. Here, there is a bona fide dispute over the amount of the Pensioners' pension. Hence, an award of double damages or attorney fees under RCW 49.52.070 is not warranted.

■ *Attorney Fees under RCW 49.48.030.* The Pensioners next contend that the court may award attorney fees under RCW 49.48.030, entitled "Attorney's fee in action on wages," which provides, in part, that:

> In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer.

RCW 49.48.030 provides for the award of attorney fees "[i]n any action in which any person is successful in recovering judgment for wages or salary owed to him." RCW 49.48.030 is a remedial statute that must be construed liberally in favor of the employee. *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 34, 42 P.3d 1265 (2002). A liberal construction requires that the provision's coverage be liberally construed in favor of the employee and that the provision's exceptions be narrowly defined. *Id.* (citing *Peninsula Sch. Dist. No. 401 v. Pub. Sch. Employees of Peninsula*, 130 Wn.2d 401, 407, 924 P.2d 13 (1996)). Moreover, the provision " 'should be liberally construed to advance the Legislature's intent to protect employee wages and assure payment.' " *Id.* at 35 (quoting *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 520, 22 P.3d 795 (2001)).

■ Although chapter 49.48 RCW contains no definition of "wage," courts have applied the definition contained in a related statute, RCW 49.46.010(2), which reads in perti-

nent part: " ' "[w]age" means compensation due to an employee by reason of employment.' " *Hayes v. Trulock*, 51 Wn. App. 795, 806, 755 P.2d 830 (1988) (quoting RCW 49-.46.010(2)); *see also Naches Valley Sch. Dist. No. JT3 v. Cruzen*, 54 Wn. App. 388, 398-99, 775 P.2d 960 (1989).

Washington courts have interpreted RCW 49.48.030 broadly, and attorney fees have been awarded for breach of an employment contract, *Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 450-51, 815 P.2d 1362 (1991), and breach of a labor contract, *Naches Valley*, 54 Wn. App. at 399. *Ass'n of Fire Fighters*, 146 Wn.2d at 34-35. Courts have also interpreted "wages or salary owed" to include back pay, front pay, commissions, and reimbursements for sick leave. *Id.* at 35. These cases demonstrate that awards for attorney fees under RCW 49.48.030 are not limited to judgments for wages or salary earned for work performed, but, rather, that attorney fees are recoverable under RCW 49.48.030 whenever a judgment is obtained for any type of compensation due by reason of employment. Pensions are deferred compensation for work performed. *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 698, 296 P.2d 536 (1956). Consequently, the judgment here is for "wages" as the term is used in RCW 49.48.030.

Richland asserts that the remedies available under chapter 49.48 RCW are limited to employees. However, this reading ignores the plain wording of RCW 49.48.030, which states that attorney fees may be awarded "[i]n *any action* in which *any person* is successful in recovering judgment for wages or salary owed." (Emphasis added.) There is no requirement that the plaintiff be a current employee. Moreover, RCW 49.48.030 also provides that the award "shall be assessed against said employer or *former employer*." (Emphasis added.) " 'Statutes must be interpreted and construed so that all the language used is given effect . . . .' " *City of Seattle v. State*, 136 Wn.2d 693, 698, 965 P.2d 619 (1998) (quoting *Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996)). Hence, there is no support for the argument that an award

of attorney fees under RCW 49.48.030 is proper only where the plaintiff is a current employee.

We reverse and remand for the entry of a judgment in favor of the Pensioners consistent with our opinion. We grant the Pensioners' request for attorney fees under RCW 49.48.030 and award fees at the trial level and on appeal. On remand, the superior court shall determine the amount of the Pensioners' attorney fees. In view of our disposition, we do not consider whether the court erred by considering hearsay evidence when deciding the motion on summary judgment.

BROWN, C.J., and SWEENEY, J., concur.