[No. 34978-7-II.   Division Two.   April 10, 2007.]

Ellen Hahn, *Appellant*, v. The Department of Retirement Systems, *Respondent*.

*Eric R. Hansen*, for appellant.

*Robert M. McKenna, Attorney General*, and *Sarah E. Blocki, Assistant*, for respondent.

¶1 QUINN-BRINTNALL, J. — In 1998, part-time community and technical college instructors filed a class action lawsuit claiming that Washington State's colleges had improperly denied them pension and health care benefits. *See Mader v. Health Care Auth.*, 149 Wn.2d 458, 70 P.3d 931 (2003). Ellen Hahn, a class member, taught in the developmental studies department at Highline Community College between 1975 to 1981. Hahn now appeals an order issued by the presiding officer of the Department of Retirement Systems (DRS) that awarded her 3.33 years of service credit toward her pension. Hahn contends the presiding officer misclassified her as a part-time employee because she worked at least 80 percent of the hours of a full-time department employee. As a full-time employee, Hahn contends she is entitled to 5.67 years of service credit for the years she taught developmental studies at Highline. Under the controlling *Mader* settlement formula, the presiding officer correctly calculated Hahn's pension service credit at 3.33 years. We affirm.

## FACTS

¶2 This case springs from the *Mader* class action settlement. In 1998, a class of part-time community and technical college instructors sued because the colleges improperly denied them pension benefits. *Mader*, 149 Wn.2d 458. The parties settled the case and agreed that: (1) class members may apply to the DRS to adjust their service credits and (2) in the absence of other evidence, the DRS would apply WAC 415-112-335 to determine whether an instructor was a full-time or part-time employee and to calculate her service credits accordingly.[1]

---

[1] WAC 415-112-335 reads:

Most community and technical colleges employ academic employees under contracts expressed in terms of a certain number of contact hours, which are usually limited to actual time spent in the classroom. Most academic positions require more time to be spent providing services to the college than are reflected in the contact hours. However, actual hours worked are not submitted by the academic employees nor recorded by the college. This subsection adopts a method for estimating hours of work in order to determine membership

¶3 Hahn is a *Mader* class member and availed herself of the settlement. She taught at Highline, but between 1975 and 1981, Highline did not give her pension benefits. After the *Mader* settlement agreement, Hahn asked the DRS to reassess her pension eligibility between those years. The DRS agreed that Hahn was eligible for the Teacher's Retirement System Plan I, which is open only to those who qualified before 1977.

¶4 Hahn disagreed with the DRS's calculation of her retroactive service credit. The DRS first calculated the credit at 3.14 years of service credit, but Hahn thought she was entitled to a full 6 years. The DRS recomputed Hahn's entitlement and set the figure at 3.33 years. Hahn petitioned for internal review, and the petitions examiner concluded that 3.33 years was the correct figure.

¶5 Under the Administrative Procedure Act, Hahn appealed the petitions examiner's decision to the DRS's presiding officer, arguing that she was entitled to 5.67 years of service credit. Ch. 34.05 RCW. She downgraded her request from 6 years because she admitted that she was entitled to

eligibility and service credit in plan I and plan II. This estimate is to be used solely for that purpose. The estimate is not a representation by the department of actual hours worked and is not to be used as a basis for calculating other benefits or salary for technical college and community college academic employees.

(1) **Plan I.** In order to estimate the number of days worked by a TRS I technical college or community college faculty academic employee for a particular month, the college will:

(a) Determine the number of working days in the month as defined by the college's adopted academic calendar;

(b) Determine the part-time workload for the employee. The part-time workload is the percentage of the part-time employees' weekly in-class teaching hours to the weekly in-class teaching hours required of a full-time instructor in that employee's discipline at the college; and

(c) Multiply the number of working days in the month by the academic employee's part-time workload.

The resulting number is an estimate of days worked by the academic employee during the month. The college will report this estimate to the department for the sole purpose of determining plan I service credit and/or membership eligibility.

. . . .

(3) **Definitions.** "In-class teaching hours" means contact classroom and lab hours in which full-time or part-time academic employees are performing contractually assigned teaching duties. The in-class teaching hours shall not include any duties performed in support of, or in addition to, those contractually assigned in-class teaching hours.

only 0.67 years of credit during the 1977-78 school year. In the appeal to the presiding officer, the pivotal issue was how many contact hours a full-time teacher in her position worked. If Hahn worked 80 percent or more of the full-time hours, she was entitled to 5.67 years under RCW 41.32.270. But if Hahn worked less than 80 percent of a full load, she was entitled to the fraction that is proportional to the number of hours that she worked. RCW 41.32.270.[2]

¶6 The presiding officer examined conflicting evidence regarding the number of contact hours in a full-time workload for Hahn's position. The officer concluded that a full-time workload was 330 contact hours per quarter and found that Hahn worked fewer than 80 percent of that number of hours between 1975 and 1981. The presiding officer then confirmed the DRS's computation under the relevant mathematical equation and agreed that 3.33 years was the correct result.

¶7 Hahn appealed the presiding officer's decision to the superior court. That court found that the presiding officer's final order was correct in all regards except that the presiding officer had incorrectly equated the terms "official school year" and "fiscal year." Clerk's Papers (CP) at 66. It remanded with directions that the DRS calculate teacher's service credit according to the time worked during each official school year. RCW 41.32.270. The record of the proceedings on remand have not been made a part of our appellate record, but appellate counsel agree that on remand the presiding officer concluded that 3.33 years remained correct under the superior court's ruling.

¶8 This appeal requires that we answer three questions: (1) whether substantial evidence supports the presiding officer's rulings that Hahn was a part-time worker entitled to 3.33 years of service credit, (2) whether the unambiguous pension laws at issue must be liberally construed in Hahn's favor, and (3) whether the presiding officer was arbitrary

---

[2] The parties refer to the full-time workload as "FTE-F," which stands for "full time equivalency." Clerk's Papers at 29. For clarity, we use the less technical phrase "full-time workload."

and capricious in awarding Hahn 3.33 years in pension service credit.

## ANALYSIS

### STANDARD OF REVIEW

¶9 RCW 34.05.570 governs judicial review of an agency order. This court stands in the shoes of the superior court and applies the standards of RCW 34.05.570 directly to the agency record. *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004). Hahn has the burden of proving that the presiding officer's order is invalid for one of the reasons specifically set forth in the statute. RCW 34.05.570(1)(a), (3). Hahn asserts three statutory grounds for reversal, claiming that: (1) substantial evidence does not support the order, (2) the presiding officer erroneously interpreted or applied the law, and (3) the presiding officer acted arbitrarily and capriciously in entering an order that awards her only 3.33 years of pension service credit.

### SUBSTANTIAL EVIDENCE

¶10 Hahn first argues that substantial evidence does not support the presiding officer's conclusion that a full-time workload was 330 contact hours per quarter because the officer relied on hearsay evidence that was unreliable and unpersuasive. We disagree.

#### A. Standard of Review

¶11 When a party contends that substantial evidence does not support an agency decision, we review the entire agency record. RCW 34.05.570(3)(e). Evidence is substantial if it is of sufficient quantity to persuade a fair-minded person of the truth or correctness of the agency order. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998). We view the evidence and any reasonable inferences in the light most favorable to the party that prevailed in the

highest forum exercising fact-finding authority. *Schofield v. Spokane County*, 96 Wn. App. 581, 586-87, 980 P.2d 277 (1999). Here, the prevailing party was the DRS.

B. Effect of *Mader* Settlement

¶12 Hahn asserts that other department members who were considered full-time employees did not actually work 330 hours and that her status should be based on whether she worked 80 percent of the contact hours that one full-time employee (the department head) actually worked during the disputed time period. She argues that during the time at issue she was a full-time employee and that the retirement benefit credit calculation formula set out in WAC 415-112-335 does not control the calculation of her retirement credits. But the only reason that Hahn received a benefit recalculation is because she qualified as a member of the *Mader* class. The *Mader* class members are, or were, part-time employees. Moreover, the *Mader* settlement mandates that the DRS use WAC 415-112-335 to calculate class members' benefits unless there is contrary evidence establishing the actual hours that the member worked. As discussed below, Hahn produced no other competent evidence of her work hours. Thus, under the *Mader* settlement, WAC 415-112-335 controls the calculation of Hahn's retirement benefit credits.

C. Substantial Evidence

¶13 Substantial evidence supports the DRS finding that Hahn was a part-time employee. The presiding officer found that part-time employees were hired under quarterly contracts, while full-time employees had annual contracts. Hahn does not dispute this. Hahn's employment contracts were negotiated quarterly. Thus, Hahn was a part-time employee.

¶14 Additionally, substantial evidence supports the presiding officer's conclusion that a full-time worker in Hahn's position was required to work 330 contact hours per quarter. Exhibit 7 is a 1975 faculty assignment guideline

that indicates that full-time teachers of adult basic education and high school completion were required to work between 330 and 440 contact hours per quarter. And exhibit 8 is a 1977 definitional chart of the full-time workload. Exhibit 8 states that "High School Completion, Continuing Education, Adult Basic Education, Developmental Studies, and Student Services require contact hours of 330 per quarter for each [full-time workload]." CP at 181. Hahn taught in the developmental studies department, which included classes for basic reading, study skills, vocabulary, and spelling. Based on this evidence, a reasonable person could conclude that a full-time teacher in Hahn's position was required to work at least 330 contact hours per quarter.

¶15 The evidence is undisputed: during each school year of 1975 through 1981, Hahn's employment contracts showed that she worked less than 80 percent of 330 contact hours of a full-time workload. Under the plain language of RCW 41.32.270, Hahn was not a full-time employee entitled to a full year's credit for those years during which she worked less than 80 percent of full time.[3]

### D. Not Arbitrary and Capricious

■ ¶16 Under the guise of an argument of arbitrary or capricious agency action, Hahn repeats her earlier insufficient evidence argument and asks that we review the evidence anew and find persuasive her evidence and case theory. Agency action is arbitrary and capricious if it is willful and unreasoning and taken without regard to the attending facts or circumstances. RCW 34.05.570(3)(i); *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002). But evidence balancing is not only improper on appeal, it is expressly prohibited during review of an agency action alleged to be arbitrary or capricious. *Rios*, 145 Wn.2d at 504 ("neither the existence of contradictory evidence nor the possibility of deriving conflicting conclusions from the

---

[3] We note that Hahn does not challenge the mathematical analysis that resulted in 3.33 years of service credit and it appears to be correct. The DRS employed the mathematical formula provided in WAC 415-112-335, as the *Mader* settlement required.

evidence renders an agency decision arbitrary and capricious" (citing *Aviation W. Corp. v. Dep't of Labor & Indus.*, 138 Wn.2d 413, 429, 980 P.2d 701 (1999))). Additionally, we find no evidence that the presiding officer's order calculating Hahn's retirement credit at 3.33 years was arbitrary or capricious.

EVIDENCE WEIGHT AND CREDIBILITY

¶17 Throughout her brief, Hahn asks us to reweigh the evidence and substitute our judgment for that of the presiding officer. She argues that the officer should not have relied on exhibits 7 and 8, Highline administrative records indicating that a full-time workload was 330 contact hours *per quarter*. Hahn urges us to instead rely on her testimony and theory of aggregation to find that a full-time workload was 660 contact hours *per school year*. But Hahn's employment contracts, though consecutive, were negotiated quarterly, and quarterly is the correct unit of calculation. Moreover, appellate courts do not weigh evidence or render judgments regarding witness credibility; that is the exclusive province of the trier of fact. *Affordable Cabs, Inc. v. Employment Sec. Dep't*, 124 Wn. App. 361, 367, 101 P.3d 440 (2004). Here, the presiding officer concluded that Hahn did not demonstrate that exhibits 7 or 8 were unreliable. She also found Hahn's testimony unpersuasive, uncorroborated, and lacking in detail because Hahn was recounting, from memory, events that reportedly occurred 30 years before. We will not revisit the presiding officer's decision on credibility matters.

¶18 Hahn also argues that the presiding officer should not have relied on exhibits 7 or 8 because they were hearsay and inadmissible in a civil trial. But in an administrative proceeding, a presiding officer has broad discretion to admit hearsay evidence if she determines that it is the kind of evidence upon which a reasonably prudent person would customarily rely. RCW 34.05.452(1). Hahn offers no argument as to why the presiding officer abused her discretion by admitting these exhibits, and we see none. A rea-

sonably prudent person would customarily rely on a college's administrative guidelines to determine the faculty member's workload. Moreover, we note that had the rules of evidence applied, exhibits 7 and 8 would likely have been admissible as business records. RCW 5.45.020.

¶19 Citing *McDaniel v. Department of Social & Health Services*, 51 Wn. App. 893, 897, 756 P.2d 143 (1988), Hahn argues that an agency may not rely solely on documentary evidence that has been contradicted by testimonial evidence. But Hahn's reliance on *McDaniel* is misplaced. The *McDaniel* court reviewed a ruling that an aid recipient's husband lived at home. 51 Wn. App. at 894-95. The only evidence presented to the *McDaniel* hearings officer was documents containing speculation about the husband's living situation. 51 Wn. App. at 897. The Court of Appeals remanded on the ground that the hearing officer could have simply called a witness to testify from direct knowledge and so the officer based his decision on an incomplete or inaccurate record. *McDaniel*, 51 Wn. App. at 897. Hahn does not complain that the presiding officer had an incomplete or inaccurate record, nor does she suggest any additional witnesses. Our review of the record here establishes that the presiding officer at Hahn's hearing conducted thorough fact finding on the full-time hours issue, and so *McDaniel* is inapposite.

No Legal Error

¶20 Next Hahn baldly asserts that the DRS erroneously interpreted or applied the law. RCW 34.05.570(3)(d). She argues that the presiding officer should have liberally construed the laws in her favor and that the officer required that she satisfy an incorrect quantum of proof. We disagree.

¶21 We review legal claims de novo but defer to the agency's interpretation of an ambiguous law if the agency has specialized expertise in the field. *City of Redmond*, 136 Wn.2d at 46.

¶22 Hahn alleges that the presiding officer should have liberally construed the laws in her favor. Courts

liberally construe ambiguous pension legislation to favor beneficiaries. *Chancellor v. Dep't of Ret. Sys.*, 103 Wn. App. 336, 342, 12 P.3d 164 (2000). But Hahn does not argue that the retirement laws at issue are ambiguous or require construction. Moreover, the presiding officer did not construe the statutes. Instead, she applied the relevant statute and regulation according to their plain unambiguous terms. Because the statute was unambiguous, the presiding officer did not engage in statutory construction, in favor of Hahn or otherwise. *See Chancellor*, 103 Wn. App. at 342 (explaining that liberal construction is required only if a court cannot plainly interpret a law on its face).

¶23 According to Hahn, the presiding officer also erred by requiring that Hahn prove her case by "clear and convincing" evidence. Br. of Appellant at 30. Finding 20 states that Highline's estimated retirement benefits "will withstand challenge unless there is a convincing showing that it is incorrect." Administrative R. at 16. But, other than Hahn's bald assertion, there is no indication that the presiding officer equated the word "convincing" with the term of art "clear and convincing evidence." Hahn does point out that WAC 415-08-420(2) places the burden of proof on the appellant. But that rule does not specify the quantum of proof required, and Hahn provides no argument about what she believes is proper. More importantly, the record does not demonstrate that a preponderance of the evidence supports Hahn's position. Thus, Hahn has failed to demonstrate that the presiding officer used a higher standard of proof than allowed or that she would have prevailed under a mere preponderance of the evidence standard.

ADDITIONAL ARGUMENTS

¶24 Hahn inserts three arguments that did not affect the presiding officer's decision. Hahn argues that the officer erred when she held that: (1) each quarter comprises 11 weeks (Hahn asserts that the summer quarter consists of sessions ranging from 5 to 12 weeks); (2) Highline Benefits

Manager Denise Kledzik, who compiled data for the DRS's review of Hahn's pension, worked with Mary Anderson, the secretary who prepared Hahn's employment contracts during 1975 to 1981; and (3) the term "official school year" is synonymous with "fiscal year." Hahn does not show how, if at all, these alleged errors affected the final order, but the third argument has some merit. The superior court agreed that the presiding officer should not have equated the terms "official school year" and "fiscal year" and remanded for recalculation within the correct time frame. CP at 66. Our record on appeal does not contain the subsequent proceedings. But Hahn does not dispute the DRS's statement in its brief that after remand, it recalculated Hahn's service credit and concluded that its previous use of the term "fiscal year" did not affect the calculation. Hahn has failed to demonstrate how any of these three alleged errors may have affected her rights or altered the DRS pension service credit decision. We grant relief only for errors that affect a result by substantially prejudicing a party. RCW 34.05-.570(1)(d). Hahn has not demonstrated such prejudice.

¶25 Accordingly, we affirm.

BRIDGEWATER and ARMSTRONG, JJ., concur.