IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SHANAREL DEMENT f/k/a SHANAREL ANCHETA, | ) ) ) | No. 82859-2-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | |
| Respondent. | ) ) ) | |

HAZELRIGG, J. — Shanarel Dement appeals the review decision and final order of the Department of Social and Health Services (DSHS) Board of Appeals, which affirmed the substantiated finding by DSHS Adult Protective Services that she had neglected a vulnerable adult. The finding was based on Dement's failure to supervise a resident at her adult family home who left the home unattended and her subsequent failure to contact police for nearly twelve hours after she learned of his elopement. The DSHS Board of Appeals applied the proper legal standard and the finding of neglect is supported by substantial evidence. Accordingly, we affirm.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

F.G. was a vulnerable adult who was placed in Shanarel Dement's adult family home (AFH) in December 2018 pursuant to a least restrictive alternative plan. F.G. was nearing completion of a 180-day commitment under the involuntary treatment act when the least restrictive alternative plan was authorized and he was transferred to the AFH from Western State Hospital, where he had originally been committed. F.G. had a history of schizophrenia, failure to take prescribed medication, drug use, and convictions for numerous violent felonies, including attempted murder. The "Comprehensive Assessment Reporting Evaluation" (CARE) plan included this history, as well as other behavioral concerns. The CARE plan for F.G. required "supervision" with "locomotion outside of immediate living environment to include outdoors." (Capitalization omitted). The caregiver was to "[t]ake client to store," and "[d]rive client to appointments." Dement was instructed in the negotiated care plan she signed that "[care giver] will let provider know if F.G. wants to go outside so [care giver] can take him. [Care giver] should ensure that [F.G.] shouldn't go far to prevent wandering." If F.G. left the AFH without supervision, Dement's facility was to call F.G.'s case manager to decide whether law enforcement should be contacted.

The record indicates F.G. had left the AFH numerous times while under Dement's care without any calls to the case manager. However, F.G.'s case manager was called on April 10, 2019 when he went to the store without supervision and did not return for more than 90 minutes. Then on April 13, 2019, F.G. left the AFH around 10:30 a.m. and did not return. Dement became aware of

F.G.'s elopement by 12:30 p.m., however she did not contact F.G.'s case manager or law enforcement until 10:43 p.m. F.G. was not located for nearly two months. When F.G. was eventually found, he was in a state of mental health crisis in the middle of a road in Oregon and was taken to a local hospital for evaluation and treatment.

Based on F.G.'s elopement from the AFH, leading to his status as missing for nearly two months and serious decompensation of his mental health, DSHS Adult Protective Services (APS) investigated. APS ultimately entered a substantiated finding of neglect of a vulnerable adult against Dement on June 27, 2019. On July 1, 2019, Dement requested a review of that finding by the Office of Administrative Hearings (OAH).[1] In April 2020, an administrative law judge (ALJ) conducted a two-day hearing during which Dement and DSHS presented testimony regarding the incident with F.G., the APS investigation, and the resulting finding of neglect. On June 29, 2020, the ALJ issued a written decision, the initial order, upholding the June 2019 APS finding of neglect of a vulnerable adult.

On July 8, 2020, Dement sought review of the initial order by the DSHS Board of Appeals (BOA). She also filed a motion for a temporary restraining order, expressly seeking to "prevent the DSHS or any other program or sub-party of the [DSHS] from placing [Dement's] name in the [Background Registry System (BRS)]."[2] On October 22, 2020, the BOA review judge denied Dement's request

---

[1] The initial order entered by the ALJ after the April 2020 hearing indicates that Dement's request for review was dated July 10, 2019, but based on the documents contained in the administrative record, this appears to be a typographical error.

[2] RCW 74.39A.056(2) prohibits employment as a care giver for, or other unsupervised access to, vulnerable adults if the provider is included in any state registry based on a finding of neglect or abuse of a vulnerable adult.

for stay of entry into the BRS and issued a review decision and final order (the final order), which affirmed the initial order of the ALJ.

Dement next sought judicial review of the final order in King County Superior Court and again filed a motion for a temporary restraining order and injunction to prevent DSHS from placing her name in the state BRS based on the substantiated neglect finding.[3]  After considering briefing and oral argument of the parties, the superior court judge affirmed the final order of the BOA review judge.  Dement timely appealed to this court.

## ANALYSIS

I.    Scope and Standard of Review for Administrative Appeals

Though Dement raises claims regarding other sanctions imposed by the State as a result of F.G.'s elopement, and assigns error to the superior court's ruling, we limit our review to the October 22, 2020 final order as that is the only decision properly before this court.  The other sanctions[4] she discusses in her

---

In briefing to this court, Dement relies on this fact to claim that the substantiated neglect finding, and resulting registration requirement, violates the prohibitions on excessive fines and cruel and unusual punishment contained in the 8th Amendment to the United States Constitution. However, she fails to engage with the proper constitutional tests for such challenges. Accordingly, we decline to consider those arguments.

[3] The record transmitted on appeal does not contain Dement's October 30, 2020 motion for temporary restraining order and injunction and supporting memorandum. However, briefs opposing and supporting the motion were submitted and the parties appear to agree as to the procedural facts regarding this aspect of the proceedings.

The same is true for a second motion for temporary restraining order and injunction and supporting memorandum apparently filed by Dement on November 23, 2020. The record before us does not contain any rulings on these motions by the superior court.

[4] Dement also complains of the imposition of a civil fine and conditions on her license to operate an AFH. However, those sanctions are not properly before us. As a preliminary matter, Dement must exhaust all administrative remedies as to each sanction prior to judicial review. RCW 34.05.534. There is nothing in the record to suggest that she appealed those other sanctions or sought consolidation of the various penalties for purposes of her appeal here.

briefing are outside the scope of this appeal; the only question for us to consider is whether the finding of neglect is supported by substantial evidence.

Next, under Washington's Administrative Procedure Act (WAPA),[5] RCW 34.05.570 governs judicial review of the final agency action. "In reviewing administrative action, this court sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). "The WAPA allows a reviewing court to reverse an administrative decision when, inter alia: (1) the administrative decision is based on an error of law; (2) the decision is not based on substantial evidence; or (3) the decision is arbitrary or capricious." Id. The party challenging an agency's action must demonstrate that the action was invalid. RCW 34.05.570(1)(a).

This court will grant relief from an agency order when the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d). "We will defer to an agency's factual findings, but we ultimately review its conclusions of law de novo." Herman v. State of Wash. Shorelines Hr'gs Bd., 149 Wn. App. 444, 458, 204, P.3d 444 (2009). "This standard is highly deferential to the administrative fact finder." Motely-Motley, Inc. v. State, 127 Wn. App. 62, 72, 110 P.3d 812 (2005).

Two of Dement's three assignments of error presented in her opening brief expressly challenge the ruling by the King County Superior Court affirming the neglect finding. However, Tapper makes clear that we do not review the actions

---

[5] Ch. 34.05 RCW.

of the superior court. As such, we turn our attention to her third challenge that addresses the BOA final order upholding the APS finding of neglect.

## II.     Substantiated Finding of Neglect of a Vulnerable Adult

We review cases involving neglect of a vulnerable adult under RCW 74.34.020(16)(b). This was recently clarified in Woldemicael v. DSHS, wherein this court provided the specific standard for neglect findings as to vulnerable adults. 19 Wn. App. 2d 178, 494 P.3d 1100 (2021). Woldemicael expressly disavowed use of the child neglect standard articulated in Brown v. Department of Social & Health Services in cases involving allegations of neglect of vulnerable adults. Id. at 181 (citing Brown, 190 Wn. App. 572, 360 P.3d 875 (2015)). While her briefing advocated for application of the Brown standard, Dement conceded at oral argument before this court that Woldemicael controls. As such, there is no dispute between the parties that the ALJ and BOA utilized the proper neglect standard under RCW 74.34.020(16)(b) in reaching the determination affirmed in the final order. There was no error as to the proper legal standard here.

We then turn to a substantial evidence review of the Board's finding. Neither party disputes that F.G. is a vulnerable adult or that Dement owed him a duty of care. In actuality, Dement does not argue the facts found by the BOA are not supported by substantial evidence, but rather urges this court to reweigh those facts to determine if they could support another conclusion. However, that is not how this court engages in appellate review of agency decisions. See Hanh v. Dep't of Ret. Sys. of State of Wash., 137 Wn. App. 933, 939–40, 155 P.3d 177 (2007).

We need only determine whether the evidence of Dement's actions or omissions supports the findings of neglect in the final order. The final order contains two particularly key conclusions:

> 17. This Appellant's failure to follow F.G.'s Negotiated Care Plan and CARE Assessments, and to provide F.G. with the adequate supervision necessary to keep him from eloping from her adult family home, demonstrated a serious disregard of potential consequences to F.G.'s health and welfare. This Appellant knew that F.G. required supervision outside of the AFH, knew that F.G. wanted to go to Oregon, and knew that F.G. had a lengthy criminal history in six (6) states, as well as a history of suicide attempts, substance abuse, and attempted assault. In spite of this knowledge, the Appellant failed to require caregiver supervision of F.G., whenever he left the AFH. Based on the Appellant's knowledge at the time of the incident, allowing F.G. to leave the AFH unsupervised demonstrated a serious disregard of potential consequences to F.G.'s health and welfare.

> 18. This Appellant's failure to follow F.G.'s December 13, 2018, Treatment Plan, and to timely notify Valley Cities Mental Health of F.G.'s elopement also demonstrated a serious disregard of potential consequences to F.G.'s health and welfare, and to the health and welfare of others. This Appellant waited nearly twelve (12) hours before notifying Valley Cities Mental Health of F.G.'s elopement. This delay demonstrated a serious disregard of F.G.'s safety, and the health and safety of other individuals that happened to encounter F.G. Additionally, the delay allowed F.G. more time in which to make his ultimately successful "escape." Based on the Appellant's knowledge at the time of incident, waiting nearly twelve (12) hours before notifying Valley Cities Mental Health of F.G.'s elopement demonstrated a serious disregard of potential consequences to F.G.'s health and welfare.

Each of these conclusions is rooted in undisputed evidence and support the finding for neglect, therefore the ultimate substantiated finding under RCW 74.34.020(16)(b) was sufficiently supported. The final order utilized the correct definition of negligence under the statute and, as DSHS succinctly puts it in briefing, "The Final Order properly reviews the evidence of the functional limitations for F.G. in determining that what Ms. Dement did in allowing him into the

community unsupervised and leaving him there without a law enforcement search for twelve hours was neglectful."

Though Dement asserts that the final order was based on an improper reading of the F.G.'s plan of care, this argument is irrelevant as to her actions, particularly given that the final order primarily relies on the CARE report and negotiated care plan to establish F.G.'s limitations and inability to safely function on his own. Accordingly, these documents demonstrate that Dement was aware of and did create a risk by leaving F.G. in the community unsupervised for such an extended period of time without contacting his case manager or law enforcement. Further, he was ultimately missing for two months and found in the middle of a road in a neighboring state. First responders concluded that F.G. was in a sufficiently deteriorated mental state that they detained and transported him for immediate care, which included holding him for a mental health assessment. This was precisely the sort of risk that the supervision requirements contained in the negotiated care plan sought to avoid. Finally, we decline to reach Dement's unsupported claims that the investigation was biased or did not follow proper procedure, as outside the record on appeal. DSHS utilized the correct statutory definition of neglect in considering the evidence presented and reaching the decision contained in the final order.[6]

---

[6] Dement also seeks an award of attorney fees under the equal access to justice act, RCW 34.05.570(3)(i). However, because she does not prevail in her appeal, her request is denied.

Affirmed.

WE CONCUR: